(126 So. 556)

**MATHEWS BROS. v. BERNIUS.**

No. 30341.

Feb. 3, 1930.

Fred Zengel, Jr., of New Orleans, for applicant.

Deutsch & Kerringan and Bert Flanders, Jr., all of New Orleans, for respondent.

OVERTON, J.

Defendant purchased, with the authority of her husband, wholly upon terms of credit, a certain lot of ground in the city of New Orleans. This purchase was made on June 2, 1920. Some seven or eight years later, defendant concluded to sell the lot, and listed it with plaintiff for sale. A written offer was made plaintiff, on April 12, 1928, by F. T. Coburn, to purchase the property. Defendant accepted the offer on the same day in writing, and in the same instrument bound herself to pay plaintiff a commission of four per cent. and the attorney's fees and costs that might be incurred in enforcing the collection thereof.

The listing of the property and the acceptance of the offer to purchase, including the agreement to pay the commission and the attorney's fees, were acts performed by defendant without the knowledge or consent of her husband.

When defendant listed the property for sale and accepted the offer to purchase, she thought that it was her own separate property, but, when Coburn's attorney examined into the title, he found that, notwithstanding the title stood of record in defendant's name, the property was not defendant's separate property, but belonged to the community of acquets and gains existing between defendant and her husband, over which defendant had no control, and therefore advised Coburn to reject the title tendered, unless defendant's husband signed the deed with her. The husband of defendant refused to

sign the deed, and the title was therefore rejected.

Plaintiff then demanded of defendant the commission, which she had bound herself to pay, but defendant refused to pay it on the ground that the property was community property and that she had no right to contract with reference to community property.

It will not be questioned that a married woman, save, perhaps, in certain rare instances, involving her sustenance, is without right to dispose of property, belonging to the community, or to bind it for her debts. However, the decision of this case is not dependent upon that proposition. The proper solution of the case depends upon whether a married woman has the right to bind herself to pay commissions and attorney's fees thereon, with the end in view of selling property, which she assumes at the time to be her property, but which later developments disclose she is unable to convey title to, because it is not her separate property, but is property belonging to the community of acquets and gains, existing between her and her husband, which he alone, as head and master of the community, has the right to sell.

Prior to the year 1916 the laws of this state, for the purpose of protecting married women, greatly restricted their natural right, as women, to contract, and also restricted their rights in other respects. However, in 1916, the Legislature, in response to views, which had gained a foothold in this state, enlarged the rights of married women by the passage of Act 94 of 1916. By that act married women were permitted to contract, and to bind and obligate themselves personally and with reference to their separate and paraphernal property, and to appear in court and to sue and be sued to the same extent, and in the same manner, as though they were sin-

gle, but with the proviso that nothing in the act should be construed as affecting the laws, regulating the matrimonial community, or prescribing what shall be deemed community property and what the separate property of the spouses.

This act was considered by this court in Lorio v. Gladney, 147 La. 930, 86 So. 365. That case is not pertinent here, but it was there decided that the act did not remove the incapacity of a married woman, established by the Civil Code, to mortgage or pledge her separate property for a debt of her husband, but merely permitted her to do without the authority of her husband what she was theretofore capable of doing only with his authorization.

Section 1 of the Act of 1916 was amended and re-enacted by Act 244 of 1918. This act authorized a married woman, whether a resident of this state or not, to contract debts, to purchase, sell, and mortgage, and to bind and obligate herself personally with reference to her separate and paraphernal property, and to appear in court, and to sue and be sued, to the same extent as though she were a feme sole, and contained the same proviso as did the Act of 1916, relative to its not affecting the laws concerning community and separate property.

This act was considered by this court in Hicks Motor Co. v. Caldwell, 148 La. 21, 86 So. 598. The case came before the court on a writ of review from the Court of Appeal. That court held, when the case was before it, that the Act of 1918, in so far as it granted authority to married women to sign contracts, without being authorized by their husbands, related exclusively to contracts with reference to their separate paraphernal property, and therefore that a married woman could not bind herself, without the au-

thority of her husband, for the debt of a third person. This court, however, in reviewing the judgment rendered by the Court of Appeal, said that it could not concur in that view, and held that a married woman could bind herself, without the authorization of her husband, under the Act of 1918, for the debt of a third person. In that case the court expressly refrained from expressing its view as to the right of the wife to bind herself for a debt of the husband, as being unnecessary to the decision of the case.

Possibly, because of that reservation of opinion, the Legislature passed Act 219 of 1920, amending and re-enacting Act 244 of 1918. This act is the same as the Act of 1918, except that it expressly provides that nothing in it shall be construed as authorizing a married woman to contract with her husband, or as granting her the right to mortgage or pledge her separate and paraphernal property for his benefit, or to bind or obligate herself personally or as surety for him.

There was no further change in the laws, regulating the rights of married women to contract, until the passage of Act 132 of 1926. This act enlarges the rights of married women, so as not only to permit them to bind their separate property and themselves personally for the debts of third persons, without the authorization of their husbands, but to bind themselves and their paraphernal property even for the debts of their husbands. It is under this act that the case before us must be decided. The act, including its title, reads as follows: ·

"An Act to define the capacity of, and to authorize married women to enter into contracts relating to their separate and paraphernal property and with reference to suits by and against them, and to repeal all laws, or parts of laws in conflict herewith.

"Section 1. Be it enacted by the Legislature of Louisiana, That a married woman, whether a resident of this State or not, shall be competent to contract debts, purchase, sell and mortgage and to bind and obligate herself personally and with reference to her separate and paraphernal property; to appear in court and to sue and be sued; to sell, alienate or otherwise dispose and to mortgage and pledge or otherwise encumber her separate and paraphernal property for the benefit of herself, her husband or any other person, and to bind and obligate herself personally or as surety for her husband or any other person.

"Sec. 2. That such married women shall exercise the rights granted by Section 1, hereof, without the necessity of obtaining the authority of·her husband or the judge.

"Sec. 3. That the rights hereby granted shall not apply to married women under the age of eighteen years or to married women who are interdicted.

"Sec. 4. That nothing herein contained shall be deemed or construed to affect in any way the statutes of this State establishing and regulating the matrimonial community of acquets and gains, and prescribing what shall be deemed separate property of the spouses.

"Sec. 5. That all laws or parts of laws in conflict herewith, be and the same are hereby repealed."

█ It is obvious from section 1 of this act that a married woman has the right, not only to bind herself and her separate property for her benefit or for the benefit of a third person, without the authorization of her husband, but also to bind herself and her separate property for his benefit. As she may bind herself for the benefit of her husband, who is by law the head and master of the community, and responsible for its debts, by

reasonable implication she may bind herself for a debt of the community, for such a debt is the husband's debt. Therefore, should a married man undertake to sell community property, his wife would have the right to bind herself in favor of the real estate broker for the payment of the broker's commission.

While the facts upon which the statement, last made, rests do not exist in this case, yet the statement serves to show to what extent the Legislature has deemed proper to enlarge the rights of married women with reference to their right to contract. Generally speaking, but excepting the right to contract with their husbands, married women have, under the Act of 1926, as much power to contract debts as if they were single, though not so as to bind the community, or interfere with the husband's rights as head and master thereof.

██ With the foregoing observations before us, touching the right of married women to contract debts, it is not difficult to determine whether a married woman, who assumes that a piece of real estate is her separate property, and undertakes to sell it through a broker, has the power to bind herself, without the authorization of her husband, to pay the broker a commission, and an attorney's fee thereon, in the event of suit to collect the commission, when it appears that the wife's assumption was erroneous, and that she could not convey title, because the property was in fact community property. The wife, in such a case as the one here presented, is in the same position as she would be, if it appeared that she could not convey title, not because the community owned the property, but because some stranger owned it. The fact that the community owned the property, instead of some third person, is here an unimportant circumstance. Where, as was the case here,

the broker's contract was to find a purchaser, his right to his commission is dependent upon whether he has found and produced one, who is able, ready, and willing to buy on the terms prescribed by his principal. When the broker produces such a purchaser, he is entitled to his commission, although the sale is not consummated, because of the inability of the vendor to comply with his offer. 2 C. J. pp. 769, 770. The broker, in such a case, in the absence of notice to the contrary, has the right to act upon the assumption that his principal has a marketable title. R. J. & B. F. Camp Lumber Co. v. Tedder, 78 Fla. 183, 82 So. 865.

Plaintiff, in the case before us, acted on the assumption, which it had a right to do, that defendant had a marketable title to the property, and discharged its obligation by producing a purchaser, who was ready, willing, and able to buy. The Court of Appeal thought that plaintiff was entitled to its commission, amounting to $192, and to an attorney's fee, amounting to $38. We think that the judgment, awarding plaintiff these sums, is correct.

For these reasons, the judgment under review is affirmed.