Emile B. Doll, a real estate broker, seeks judgment against defendants, in solido, for $140, alleging that although he had been employed under a written contract giving him the exclusive right to attempt to sell certain real estate, they "conspired to defraud" him "out of his commission" and sold the property through another agent while his contract was in full force and effect. Mr. and Mrs. Anthony Russo, two of the defendants, are the father and mother of the third defendant, Vincent Russo. They deny any indebtedness to Doll, alleging that though Vincent Russo entered into the contract with him, the said Vincent Russo was not the owner of the property in question, which belonged entirely to them, the other two defendants, and that the said Vincent Russo at the time advised Doll's representative that he had no authority to make the contract but that he believed that if a good offer could be obtained his father and mother could be persuaded to accept it.
The defense of Mr. and Mrs. Russo therefore is that their son, Vincent Russo, had no authority to make for them the contract which is now sued on, and that he did so without their knowledge or consent, and the defense of Vincent Russo is that though he executed the contract with plaintiff's representative, the said representative well knew that he did not own the property and that therefore any attempt which might be made to sell it would be at the risk of the refusal of his father and mother, the true owners, to agree to accept any offer which might be obtained.
There was judgment against Vincent Russo for the amount claimed, but the suit as against Mr. and Mrs. Anthony Russo was dismissed.
Vincent Russo has appealed from the judgment against him and Doll has appealed from the judgment in so far as it dismisses the suit against the other two defendants.
The record shows that on December 18, 1940, Vincent Russo executed a written agreement with Doll who was represented by his employee, R.L. Bougere, and that under this agreement Russo employed Doll as exclusive agent "to find a purchaser for the property 2300-02 St. Bernard Avenue" and agreed to pay a commission of 4% on the gross amount of "any agreement" to sell or exchange the property.
The contract also stipulated that Russo would pay an additional 10% should the services of an attorney-at-law be required to collect the commission. The contract *Page 408 
by its terms was to remain in full force and effect for a period of six months or until June 18, 1941. On May 13, 1941, for $3,500, the property was sold and transferred to Vernille W. Bagert through another agent, and no commission was paid to Doll.
Doll did not, at the time of the making of the agency contract with Vincent Russo, make any effort to ascertain whether the said Russo was owner of the property, and he did not make any effort prior thereto, and has made none since, and the defendants contend that Doll should have ascertained who was the true owner before entering into the contract or before performing services in carrying out its provisions.
It is clear that so far as the record title is concerned, Vincent Russo had no interest therein though, on behalf of Doll, it is contended that the said Russo was, in truth, privately interested through an understanding with his father and mother. If Doll or his representative knew that Vincent Russo was not the owner and that he was merely affording to Doll the opportunity to "gamble" on obtaining such a good offer that Russo's mother and father would accept it, then there could be no recovery by Doll even from Vincent Russo, but if neither Doll nor his representative knew this, then so far as Doll's right to look to Vincent Russo for compensation is concerned, that right does not depend upon whether the said Vincent Russo actually owned the property or not. Doll was under no obligation to examine into the title to ascertain who was the true owner but was justified in assuming that the person who made the contract either owned the property or was authorized by the true owners to negotiate for its sale. We do not, of course, mean to say that any contract which Vincent Russo might make, without the authority of the true owners, could in any way bind the owners or affect the property. All that we say is that in so far as the rights and obligations between Doll and Vincent Russo are concerned, those rights and obligations do not depend upon whether Vincent Russo owned the property when he made the agency contract. This was held in Mathews Bros. v. Bernius, 169 La. 1069, 126 So. 556, 558, in which our Supreme Court in affirming a decree of this court, held that a broker with whom property is listed for sale is under no obligation to investigate the title to the property, and, in the absence of actual knowledge to the contrary, may assume that the person who has employed him to find a purchaser is the owner. In that case the Supreme Court said: "* * * The broker, in such a case, in the absence of notice to the contrary, has the right to act upon the assumption that his principal has a marketable title. * * *"
This rule is applicable in all cases except those in which the person who has employed the broker is prevented from making title to the property by the action of some third person. For instance, in Guy L. Deano, Inc., v. Michel, 191 La. 233, 185 So. 9, 10, Michel had employed the Deano corporation as agents to sell the property standing in Michel's name and occupied as a family domicile. At that time there was nothing to prevent Michel from making title to the property. Later, however, Mrs. Michel "* * * recorded a declaration of family home which effectively prevented him from executing the deed. * * *" When the Deano corporation sued for its commission on the proof that it had produced a purchaser, the Supreme Court said: "* * * the failure of Michel to complete the sale was not due to any defect in the title but was due to a condition arising subsequently which made it impossible for him to comply with his agreement. Michel had a marketable title at the time he listed the property with Deano, Inc., and it was through no fault of his that the sale to Miss Bauman was not consummated."
In Leaman v. Rauschkolb, 1 So.2d 338, 341, we discussed these several cases and held that as a result of them it now appears: "* * * that the vendor is not responsible for a commission in the event the sale is not consummated unless (1) it appears that he, the vendor, was at fault in that he refused to convey the title to the purchaser without cause or (2) unless he is unable to consummate it because his title, at the time he agreed to sell, was not marketable. * * *"
Thus, according to the present jurisprudence, a person who lists property for sale with a broker is liable for the commission of the broker, if, because he does not own the property at the time of the listing, and is unable to secure it, he is unable to make title when a purchaser is produced. This rule, of course, does not apply if the broker at the time has actual *Page 409 
knowledge that the person who has listed the property does not own it. This question of knowledge is referred to in Mathews Bros. v. Bernius, supra. It is also referred to in Guy L. Deano, Inc., v. Michel, supra, and is discussed by us at length in Caruso-Goll v. D'Alfonso, 1 So.2d 120.
In the case at bar, as we have said, there was no knowledge on the part of Doll, or of his representative, that Vincent Russo did not own the property. It is evident then that at the time of the making of the agency contract Vincent Russo, who executed it, could not make title to the property, and could not when a purchaser was produced, and therefore he cannot point to any fault on the part of someone else, or to any act on the part of someone else which in any way prevented him from carrying out his contract with the broker. When he employed Doll, he made himself liable should Doll find a purchaser, and even though no such purchaser was produced, Doll did everything which he could do, expending energy, time and money, in an effort to effect a sale. Russo is liable to him, and the only question remaining is whether the recovery should be the full 4% commission on the sale price obtained by the other broker for the true owners. We think it should be.
Since, as between Russo and Doll, the situation is the same as though Russo actually owned the property, it follows that since Doll did everything which could have been required of him to find a purchaser, he has earned his commission just as thoroughly and effectively as though he had found a purchaser and Russo had actually owned the property. We discussed a somewhat similar situation in Myevre v. Norton, 6 So.2d 215, decided February 16, 1942, and reached the conclusion that the full amount of the commission should be paid. The judgment against Vincent Russo is, therefore, correct.
When we consider the claim against Mr. and Mrs. Russo, we notice that on previous occasions their son had represented them in negotiations involving real estate. This and other facts create a suspicion that they knew that he was attempting, through Doll, to secure a purchaser for this property. Yet we cannot say that the record shows that our brother below was manifestly in error in concluding that they had not authorized him to enter into the contract with Doll. Whether they did so is a question of fact and on such a question we should not reverse the finding made below where the record does not authorize the conclusion that the finding is obviously incorrect.
We conclude that the judgment in so far as it dismisses plaintiff's suit against Mr. and Mrs. Russo should not be reversed.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed, Vincent Russo to pay all costs except those incurred by Mr. and Mrs. Russo, which are to be paid by plaintiff.
Affirmed.
SIMON, J., takes no part.