McINNIS, Judge.
This is a demand by plaintiff for $1,375 alleged to be due by defendants for commission as a result of the sale of real estate described in the petition, for a consideration of $35,000.
The petition alleges that on February 12, 1952, Mrs. Vivian Bates Fleming executed an exclusive sales contract with plaintiff for sale of the property described iii the petition, the agreement to run until September 1, 1952, and that the defendant, Vivian Fleming Hope, (daughter of the.other deféndant, and owner of one-half interest in the property), had full knowledge of the listing of the property by her mother and concurred in same, and the listing was with her knowledge and consent.
Further alleges that on June 2, 1952 Mrs. Fleming requested that the property be listed in the "multiple listing system”,-.and executed an exclusive listing with plaintiff for a period of 4 months,' with the provision ’ that the listing could be cancelled any time after 60 days from' date of listing upon giving 10 days notice to the agent; that in accordance with the listing, defendants cancelled the listing effective 60 days after June 2, 1952, and requested plaintiff to furnish a -list of prospects to whom the property -had been shown or offered for sale during the exclusive listing period, and accordingly, on August 4, 1952 the list of prospects, including the name of J. F. Winningham, was furnished to Mrs. Fleming.
Further alleges that on August 14, 1952 defendants conveyed the property to Levi S. Hulsizer, (brother-in-law of Mrs. Fleming), for a recited cash consideration of $35,000, but that no consideration was paid, and that during July or August, 1952 defendants agreed to sell the property to J. F. Winningham and that a substantial cash payment was made by him, and that shortly thereafter he moved into the property and is making it his home; that all these things were done to defeat recovery by plaintiff of his commission for sale of the property’to Winningham.
' Answering, defendants admit that plaintiff is a licensed real estate broker, and admit ownership of the property; admit conveyance of the property to Hulsizer, and his relationship to defendants, and admit that no consideration passed. Admit that Winningham moved into the property shortly after it was conveyed to Hulsizer. Also admit amicable demand. All the other substantial allegations of the petition are denied.
After trial on the merits the district judge in a well considered written opinion rendered judgment against defendant Mrs. Vivian Bates Fleming in favor of plaintiff for the amount sued for, and rejected the demand against Mrs. Hope.
From the judgment Mrs. Vivian Bates Fleming has perfected a suspensive appeal. Plaintiff has not appealed from the judgment rejecting the demand as to Mrs. Hope.
The relevant facts in this case are not in serious dispute. On February 12, 1952 the defendant Mrs. Vivian Bates Fleming signed ail exclusive listing of her home property with plaintiff for a term expiring September. 1, 1952. This agreement is in evidence but we are not required to consider its terms, for reasons hereafter shown. Plaintiff ran numerous advertisements of the property in the Shreveport .Times and Shreveport Journal between the date of the listing and July 27, 1952.
*217 On June 2, 1952 Mrs. Fleming asked that the listing be changed ■ to what is called the “multi listing system”; The pertinent part of this listing is Section “D”, reading as follows:
“For and in consideration of services to be performed by Pioneer ■ Realty Company hereinafter called agent I hereby employ said agent as my sole and exclusive agent to sell for me the above described real property situated in the City of Shreveport, Parish of Caddo, State of Louisiana at a price and terms as above outlined and I hereby grant said agent the exclusive right to sell the same and to accept a deposit thereon.
“This employment and authority shall continue for the period of four .(4) months from date hereof, terminating at midnight on September 29th, 1952. However, I have the right to cancel this listing at any time after 60 days from this date by written notice to said agent of such cancellation, effective ten (10) days after receipt of said notice; and I agree to pay said agent five (5) percent of the selling price to $20,000.00 and 2¡/¿% of the selling price above $20,000.00 as and for the compensation of said agent hereunder in the event of a sale or an exchange of said real property by said agent or any other agent or person, including myself, while this contract is in force or if sold or exchanged within ninety (90) days after termination to anyone with whom said agent had negotiations prior to the termination provided I have had knowledge of such negotiations or said agent or sub-agent has notified me in writing on or before five (5) days after termination date of this agreement.
“It is understood that said agent is • a member of the Shreveport-Bossier Multiple Listing System and it is further agreed that said agent shall file this listing with said Multiple Listing • • System to be by it referred to its members and that such members will act as sub-agents in procuring or attempting to procure a purchaser in accordance with -this agreement, and in the event a sale or exchange shall be made through said sub-agent, all of the terms of this agreement' shall apply -to such transaction.
“In case deposit is forfeited, one-half of same shall be retained by or paid to said agent, and one-half to me, provided, however, that agent’s portion of any forfeiture' shall not exceed the amount of above" námed commission.”
Mrs. Fleming exercised the right to terminate the listing 60 days after June 2, 1952, which ended the listing August 1, 1952. During the existence of the listing she gave .plaintiff the names of several people that had. evinced interest in purchasing the property, among them, J. F. Winningham, but she told Mr. Smith not to contact him, because she did not believe that he would buy the property. Later on, the real estate firm of Prince & Wilson called Mr. Smith and discussed a probable offer by a client, and when asked the name, told him it was Winningham. After this conversation Smith went to see Win-ningham on two occasions and tried to get him to make an offer for the property, but did not succeed.
On August 4, 1952, after expiration of the contract, but long before the expiration of 90 days from its .expiration, plaintiff furnished Mrs. Fleming with a list of people contacted in efforts to sell the property. Included in the list was the name 'of J. F. Winningham. Mrs. Fleming called and objected to including his name in the list of prospects.
About this time Winningham having sold his home was looking for a place to live, and Mrs. Fleming was going to have to move to town anyway, and she and Win-ningham say that they made an agreement for him to rent the property, subject to sale at any time. However no agreement was made as .to the rental to be paid.
About August‘14th or 15th Mrs. Fleming moved out and Winningham moved in. On *218 August 14, 1952 Mrs. Fleming and her daughter executed a conveyance of the property to Mrs. Fleming’s brother-in-law, Levi. S. Hulsizer for- a recited consideration of $35,000 cash, but everyone connected with the transaction adinits that no money whatever was paid.
On August 15, 1952 Hulsizer executed a contract to sell the property to' Winning-ham for $35,000 cash and received $3,500 as part of the purchase price. The contract sets forth that this payment is not made or received as earnest money and shall not be considered other than as a part payment. The transfer of the property was to be made within 45 days from date title is approved by purchaser’s attorney unless further extension is agreed to by buyer and seller, and on October 2, 1952 an extension of 45 days additional was agreed to by the parties.
Defendant alleged and it is not denied, that the deed to Winningham was executed November 14, 1952, which is more than 90 days after the expiration of the listing.
Principal contentions of defendant are: 1, that more than 90 days having elapsed before the sale was finally closed and deed executed that plaintiff is not entitled to1 any commission, and 2, that plaintiff has not negotiated with Winningham during the time the listing was in effect.
As to the first contention we believe that the arrangement between Win-ningham and Mrs. Fleming had already been made before the 15th of August, 1952 on which date the contract of sale from Hulsizer to Winningham was signed, and that the transfer from Mrs. Fleming and Mrs. Hope to Hulsizer, which it is admitted was without any consideration, was designed to defeat the claim of plaintiff for a commission.
The record discloses that Mrs. Fleming gave Mr. Smith the name of Winningham as a prospect, and that Smith called on him and tried to get him to make an offer of $35,000 for the property, which he would not do> however he later called Mrs. Fleming and made her .an offer of. $35,000 which she did .not at once accept. She said she agreed to accept $35,000 before the contract had expired, but that she didn’t know whether she would get it because Winningham had to borrow some money, and finally she admitted that she agreed with Winningham to accept $35,000 before she cancelled the contract.
In brief defendant says that the sale was not made until the execution of the deed on November 14, 1952, which was more than 90 days after the expiration of the contract, and that the $3,500 paid on August 15, 1952 wa's “earnest money”, despite the fact that the agreement itself declares that it is not. The district judge correctly disposed of this contention by citing LSA-C.C. art. 2456, reading as follows:
“The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.”
Mr. W. H. Williams, employee of Win-ningham, and Winningham, testifying for defendant, say that Williams gave Win-ningham the first knowledge that the Fleming property was for sale, however these witnesses crossed each other up in detailing the visit of Smith to try to secure an offer from Winningham, especially in respect to whether or not Smith was invited to call again. This is unimportant anyway, for the reason that Mrs. Fleming gave plaintiff Winningham’s name as a prospect, and thereafter he was plaintiff’s prospect.
Finally defendant contends that as Mrs. Fleming owned only half interest in the property she could be cast for only half of the commission. This contention was correctly resolved. against defendant’s contention by the district judge. Doll v. Russo, La.App.1942, 7 So.2d 406 and authorities cited. This case is cited in Derbes v. Dallimore, La.App.1942, 8 So.2d 124.
*219 The record as a whole amply justifies the conclusion that there was a studied effort by defendant to defeat plaintiff’s right to a commission on the sale of the property after he had spent money advertising it, and time contacting prospects, including Winningham, in efforts to sell it. We also believe that Winningham was trying to help in the plan to avoid the payment of a commission to plaintiff.
For the reasons assigned the judgment of the lower court is affirmed at the cost of appellant in both courts.