207 So.2d 258 (1968)
OLYMPIC HOMES, INC.
v.
Elmer E. ORY.
No. 7215.
Court of Appeal of Louisiana, First Circuit.
January 29, 1968.
Rehearing Denied March 4, 1968.
Writ Refused April 19, 1968.
*259 Ralph M. Kelton, James A. McGraw, Baton Rouge, for appellant.
Elven E. Ponder, Baton Rouge, for appellee.
Before LOTTINGER, SARTAIN and ELLIS, JJ.
LOTTINGER, Judge.
This is a suit for a real estate commission allegedly due under a real estate listing agreement. The petitioner is Olympic Homes, Inc., the real estate agent, and the defendant is Elmer E. Ory. The Lower Court rendered a judgment in favor of the petitioner and against the defendant in the sum of $8,400.00, being the full amount of the demand by the petitioner. The defendant has appealed.
The record discloses that on December 27, 1962, Mr. R. DeFrances, an employee of the plaintiff real estate agency, secured an agreement signed by Elmer Ory, authorizing the petitioner to secure a purchaser *260 for the property listed therein, same being approximately 70 acres situated in the Parish of East Baton Rouge, State of Louisiana. At the time of the signing of the agreement, and at least twice afterwards, Mr. DeFrances and Mr. Ory walked over the property during which the limits, or boundaries, were pointed out to Mr. De-Frances by petitioner. No purchaser of the property was obtained by petitioner within the ninety day period of the listing agreement, however, on April 29, 1963, Mr. Ory signed an addendum or extension to the listing agreement which, in effect, extended the listing agreement for a period of thirty days from that date for the purposes of selling said property to one prospective purchaser, namely, Mr. Robert S. Reich. On May 4, 1963, Mr. Reich made a written offer to purchase the property for the sum of $84,000.00, or $1,200.00 per acre, which was the price stipulated in the agreement to purchase. This offer was refused by the defendant.
On September 10, 1963, petitioner filed the instant suit for its real estate commission contending that it had earned the commission by securing a prospective purchaser who was ready, willing and able to purchase in accordance with the terms of the listing agreement and the addendum thereto. Defendant filed an exception of no cause of action which was overruled by the Lower Court and later an exception of no right of action on the same grounds previously urged in the exception of no cause of action, which was also overruled by the Court. He then filed another exception of no cause of action on the same grounds previously urged which was not considered by the Lower Court. This exception is also without merit for the reasons hereinafter given. After trial on the merits, the Lower Court rendered judgment in favor of the petitioner and against defendant in the sum of $8,400.00.
The defendant testified at trial of the matter that he did not sign the addendum or extension to the listing agreement which was offered into Court by petitioner and which provided for the extension of time of thirty days from April 29, 1962, in order to give petitioner an opportunity to secure an offer to purchase from Robert Reich. We note that this disavowal of signature on the part of defendant was not specially pleaded in the answer which he filed in this proceeding. Under the provisions of Article 2244 of the Louisiana Civil Code and Article 1005 of the Louisiana Code of Civil Procedure the disavowal of a signature is a special or affirmative defense which must be specially pleaded. However, the testimony denying the signature by defendant was admitted into the record without objection on the part of petitioner and is therefore to be deemed an enlargement of the pleadings. Mirandona Bros. v. Danos, La.App., 56 So.2d 159.
The petitioner, however, did show by a preponderance of the evidence that the signature of the defendant to the extension was genuine. This was brought forth by Mr. DeFrances who testified that he was present and saw defendant affix his signature to the document, as well as the testimony of a handwriting expert who testified that Mr. Ory's acknowledged signature on other documents which were introduced into evidence compared favorably with that of the signature on the extension and that, in his opinion the signature on the extension was that of Mr. Ory.
The record further discloses that, subsecquent to the date of execution of the extension, the defendant discussed the proposed offer for sale of the property on several occasions with the representatives of petitioner's firm during which discussions he failed to disavow his signature to the extension. As a matter of fact the defendant did not raise this contention until the trial of this matter and we feel that the Lower Court correctly held that this defense on the part of defendant was merely an afterthought following his decision not to sell the property and that the *261 signature on the extension was the valid signature of the defendant.
Another contention made by the defendant questions the validity of the offer procured by the petitioner in that it does not comply with the terms of the listing agreement. The listing agreement describes the property as being "Appr. 70 acres @ 1200 an acre 8 miles from L.S.U., 6 miles from City Limit, 3 miles from Airline Hway, Prettiest Rolling Land on Highland Rd." As to the acreage, it shows "eight acres wide, twelve acres deep," and "Bordered in rear by Bayou Fountain." The offer made by Dr. Reich gives the following description: "A 70 acre tract of land located in Section 39 of T. 8 E.R. 1 E. on Highland Road, Being a portion of the Original 95 acre tract."
It is claimed by defendant that the offer was not responsive in that the seventy acres were to be taken from the rear portion of the property along the Bayou Fountain and not the front portion abutting Highland Road. Further, he says that the location of the servitude for passage to be furnished Reich was not finally determined to his satisfaction.
With regard to this contention on the part of the defendant, the Lower Court said:
"Having heard the testimony of the witnesses, the Court believes that it was the intention and agreement of the parties that the 70 acres was to be taken from the rear portion of the entire tract of approximately 100 acres. The description contained in the offer, particularly as it referred to Highland, was not a legal description, but merely a reference point to the property's general location. There is no doubt in the Court's mind that Ory knew that Reich's offer contemplated the rear portion of this tract, exclusive of the 20 acres known as the old home place. After Reich's timely submitted offer, it was returned to Ory for his final acceptance; however, Ory made a new proposal as to the location of the road. Mr. DeFrances said that he went to see Ory at least three times in an endeavor to successfully locate the road. Each time Ory would make another proposal as to its location, which was duly accepted by Reich. However, each time Ory would change his mind prior to formal acceptance. When it finally came apparent to Reich that no reasonable proposal on his part would be accepted, he then stood firm on his original offer. The Court believes that some time after the extension was negotiated, Ory changed his mind about selling the property. Thereafter he pursued a course of action, the purpose of which was to discourage Reich as a prospective purchaser."
The testimony of Mr. Reich as well as his wife shows that they were very much interested in acquiring the property of defendant. At the request of the defendant, the right of way running from the front of his property to the rear seventy acres which was to be acquired by the Reiches was changed on at least two occasions. The defendant himself testified of his displeasure at the fact that after he had located a fifty foot right of way to be sold to the Reiches he discovered that the Reiches had made an agreement to acquire an additional 100 feet adjoining the fifth foot right of way so as to make a boulevard going from Highland Road to the rear. The record discloses that the real estate agent as well as the Reiches attempted to lean over backwards in order to acquire the property under the listing agreement.
Defendant has funirshed us no law or jurisprudence to the effect that the listing agreement and the offer to purchase should contain a complete legal description of the property. A listing agreement is a contract of employment and need not even be in writing. Veters v. Krushevski, La. App., 100 So.2d 93; Rolston v. Buff, La. App., 130 So.2d 732. It necessarily follows that the description of property in a listing *262 agreement need not be as definite or complete as that in an Act of Sale. Although we have found no Louisiana cases in point, Verbo Brokers Vol 12 C.J.S. § 61, cites the case of Crawford v. English, 26 Ga. App. 563, 106 S.E. 621, for the proposition that "the description of property placed in the hands of a broker for sale need not be as definite and complete as that which should be given in deeds of conveyance."
This same principle would apply to an agreement to purchase. It was not intended that the document be translative of title; instead, it served evidence of an understanding that a formal act of sale would be passed at a later date after the research of title and preparation of the necessary documents. We feel, therefore, that there was no question but that the definite limits of the property to be sold had been clearly determined and defined in the negotiations between Mr. DeFrances and the defendant. These limits were agreed upon in the negotiations between Mr. DeFrances and Dr. Reich. At the time of the negotiations regarding the offer to purchase there were no objections on the part of Mr. Ory as to the location of the property to be sold except the reservation of some six acres in the rear which Mr. Reich agreed to on Mr. Ory's initial request.
It is, therefore, clear from the evidence that the petitioner performed its portion of the contract in that it advertised the property for sale and secured a prospective purchaser, Dr. Reich. It is also clear from the record that the extension of thirty days was signed by the defendant, and that he conducted negotiations with the agent subsequent to his signature of same. The Reiches were ready, willing and able to purchase the property, and timely submitted an agreement to purchase which was refused by the defendant.
A real estate agent employed to sell property is entitled to a commission when he has secured a purchaser ready, able and willing to buy on the vendor's terms. When such a purchaser is found, the agent's obligation has been fulfilled even though the sale is never consummated because of the fault of the principal. Mathews Bros. v. Bernius, 169 La. 1069, 126 So. 556 (1930); Cotter v. Figaro, 36 So.2d 291 (La.App., 1st Cir.1948); Walker v. Moore, 68 So.2d 222 (La.App., 3rd Cir. 1953); Cox v. Green, 70 So.2d 724 (La. App. 1st Cir.1954).
The judgment of the Lower Court awarded the petitioner the sum of $8,400.00. This was ten per cent of the $84,000.00 prospective purchase price as was set forth in the listing agreement.
We find no error in the decision of the Lower Court and for the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal shall be paid by defendant.
Judgment affirmed.