LANDRY, Judge.
Defendant, Mrs. Charles M. Weiland, takes this appeal from the judgment of the trial court in favor of plaintiff Cliff Stra-han, a realtor, decreeing plaintiff entitled to a commission in the sum of $1,575.00 earned upon producing a buyer for defendant’s residence listed with plaintiff pursuant to a written listing and purchase agreement. We find the trial court judgment eminently correct and affirm the decision rendered below.
Except as hereinafter otherwise indicated, the facts and circumstances leading to the present action are virtually undisputed.
Mrs. Weiland, a widow, occupied subject property as her home in which she resided with her two teen-aged children, issue of her marriage to the deceased Mr. Weiland, and her aged parents. Following Mr. Wei-land’s demise, defendant and her offspring were recognized as owners and set in possession of the residence in the proportion of an undivided one-half' interest to defendant and an undivided one-fourth interest to each of her children inasmuch as the property belonged to the community which previously existed between defendant and her deceased spouse.
Mrs. Adelaide Harper, an employee of plaintiff, was aware defendant desired to sell her home and obtained from defendant a listing thereof. Pursuant to the said listing, plaintiff obtained a purchaser in the person of one David Hess. A purchase agreement was then executed by Hess and defendant which provided that Hess consented to purchase the residence for the sum of $26,250.00.' The contract to buy and sell also provided for a down payment not in excess of $3,000.00 and was conditioned upon Hess obtaining a 90% conventional loan and the sale of his own residence at a price affording him a $1,500.00 equity therein.
Upon sale of the Hess residence for more than the stipulated equity, plaintiff informed defendant that Hess was ready to proceed with the transfer. Defendant contacted her attorney and requested that he prepare the documents necessary to consummate the deal. Defendant’s attorney then qualified appellant’s elderly father, T. C. Webb, as undertutor of the minor children to obtain the consent necessary to convey the interest owned by the minors in the property. However, for reasons unnecessary to enumerate herein, Mr. Webb declined to assent and the sale could not be confected. Plaintiff then filed this action to recover the commission allegedly due.
Defendant contends in essence that plaintiff is not entitled to the commission sought because:
(1) Plaintiff was aware defendant was a widow and therefore plaintiff is charged with knowledge that defendant did not own the property in its entirety and consequently did not have merchantable title thereto; and
(2) Plaintiff did not procure a purchaser ready, willing and able to purchase on defendant’s terms inasmuch as defendant did not assent to notification of the purchase agreement pursuant to which defendant would have been required to pledge approximately $2,600.00 of certain other assets of defendant in order to enable the purchaser to obtain the necessary 90% loan.
It is settled law that a real estate agent engaged to sell property has earned the agreed commission when he procures a purchaser ready, willing and able to buy on the terms stipulated by vendor. Production of such a prospective purchaser fulfills the realtor’s obligation notwithstanding the sale is never confected due to some fault on the part of the owner. Mathews Bros. v. Bernius, 169 La. 1069, 126 So. 556. See also, Olympic Homes, Inc. v. Ory, La.App., 207 So.2d 258, and Kuhn v. *172 Stan A. Plauche Real Estate Company, Inc., La.App., 178 So.2d 296.
A well recognized exception to the foregoing rule is that a realtor is not entitled to his commission even though he produces a ready, willing and able buyer if he, the broker, had actual notice or knowledge of some defect in the owner’s title which rendered title unmerchantable. Thus, if a realtor is aware he represents an owner having only an undivided interest in the property, he is entitled to no commission if the remaining owners decline to accept the offer made the client. However, to preclude the realtor’s right to commission it must be shown that he had actual notice or knowledge of the defect. Doll v. Russo, La.App., 7 So.2d 406. A broker is entitled to assume the person representing himself to be owner either owns the property in its entirety or is authorized to represent the true owners. The broker is under no obligation to examine the title to determine the true owner and in the absence of actual knowledge to the contrary may presume the client to be the owner capable of transferring merchantable title. Doll v. Russo, supra; Leaman v. Rauschkolb, La.App., 1 So.2d 338.
Defendant contends that plaintiff, as a licensed realtor, is charged with knowledge that defendant owned only a half interest in subject property because (1) being an experienced, professional realtor, plaintiff and his employees are charged with knowledge as a matter of law that a widow with children owns only a half interest in property following the death of the husband and father; and (2) Mrs. Harper was personally acquainted with defendant and knew defendant’s husband was deceased and that defendant had two minor children of her marriage with decedent. On this premise it is argued that Mrs. Harper is charged with knowledge that defendant owned only an undivided interest in the property.
Both arguments are without merit. The mere fact that a realtor performs in a professional capacity does not per se charge him with knowledge of a client’s legal status. Until he actually learns or is apprised of his client’s incapacity to transfer title, he may rightfully assume either that the client owns the property in its entirety or is in a position to speak for all owners involved.
Nor does the fact that Mrs. Harper knew defendant alter the situation in the case at hand. In this regard it appears that while Mrs. Harper lived approximately one block from defendant, the ladies were merely speaking acquaintances and never visited each other socially. Mrs. Harper concedes she knew defendant to be a widow but denies that she knew defendant did not own the property in fee simple. On the contrary, Mrs. Harper affirmatively declared she believed defendant was sole owner of the property and had no knowledge of an outstanding interest in the children.
It is also quite significant that defendant’s own testimony reveals beyond doubt that defendant herself was of the opinion she could sell the property at the time the home was listed with plaintiff. In this respect defendant testified she had no knowledge of the children’s interest until after the purchase agreement was signed and she called her attorney and requested that he take whatever steps were necessary to enable her to pass the sale. She readily concedes that she was surprised when being advised by her attorney that the children owned a one-half interest in the property and would have to be represented by an undertutor in the pending transaction. It further appears from defendant’s testimony that she was unaware of any impediment when she presented the matter to her father whom she had had qualified as undertutor and he declined to assent to the transaction. From the foregoing, it conclusively appears that at the time of the listing agreement neither plaintiff nor Mrs. Harper knew of any defect in defendant’s title and neither did defendant herself.
Defendant’s remaining contention is that the purchase agreement was modified with *173 out her consent to or full understanding of a verbal amendment thereto which required defendant to pledge approximately $2,600.00 as collateral to enable the buyer to secure the 90% loan called for in the contract.
Defendant, relying upon LSA-C.C. Article 2276, first contends the purchase agreement may not be altered or amended by subsequent oral agreement. This contention is without merit. The cited article is inapplicable to the case at bar inasmuch as it pertains only to instances involving title or the right to title to real property. Treadaway v. Laporte, La.App., 195 So.2d 408. In the case at hand the listing or purchase agreement is not relied upon as a contract for the sale of immovable property but only as evidence of employment of a broker by an owner and therefore need not necessarily be in writing. Such agreements may be oral from inception. Veters v. Krushevski, La.App., 100 So.2d 93. The parties therefore were free to modify the listing or purchase agreement by mutually agreeable subsequent amendment.
That defendant understood the revision which required the pledge of $2,600.00 in building and loan funds on deposit to her credit with the prospective lending agency is amply established in the record. Defendant acknowledged she was aware some $2,000.00 of her personal funds would be required to remain on deposit with the lending agency and that she would receive interest thereon during the interim of the pledge. In addition, plaintiff testified that after the purchase agreement was executed, Mrs. Harper requested that he call on defendant and explain in detail the aspects of the pledge upon which the lender insisted. Mr. Strahan stated further that he visited defendant at her home and explained the entire matter. According to Strahan, defendant thoroughly understood the arrangement and consented thereto.
Accordingly, the judgment of the trial court is affirmed. All costs to be paid by defendant.
Affirmed.