CIACCIO, Judge.
This is an action in contract to recover a real estate commission and attorney’s fees claimed to be due under the terms of a written purchase agreement. The trial court granted a summary judgment in favor of plaintiff, Gertrude Gardner, Inc., and against the defendant, Anthony J. Campo, for real estate commissions in the sum of $3,423.00 together with attorney’s fees of $1,141.00, from which judgment defendant filed a suspensive appeal.
*682 Gertrude Gardner, Inc., the real estate broker, was employed by Campo to sell a certain piece of real estate located at 300-304 Mouton Street in the City of New Orleans, under the terms of a standard listing agreement executed by both parties. The broker located the prospective purchasers, Mr. and Mrs. Richard N. Gonzales, who offered to buy the property for $81,500.00, conditioned upon the ability of purchasers to borrow the sum of $73,000.00 from a homestead under the terms set out in the purchase agreement, and this offer was accepted by defendant. The agreement further stipulated that should the homestead loan be unobtainable within thirty to forty-five days from acceptance of the offer, that the contract shall then become null and void, and the agent was authorized to return the purchasers’ deposit in full. Upon acceptance of the offer purchasers were required to make a deposit of $2,000.00 cash, plus a demand note for $6,150.00, with the real estate broker. Seller further agreed to pay the real estate agent’s commission of 6% of the purchase price to be divided between Gertrude Gardner, Inc. and Franzella Real Estate, a cooperating broker.
In accordance with the terms of their offer, Mr. and Mrs. Gonzales applied to the Fidelity Homestead Association of the City of New Orleans and were successful in obtaining a loan commitment as stipulated in the purchase agreement. The Homestead’s attorneys examined Campo’s title to the real estate, found that the title was defective in certain particulars, and refused to approve the execution of a vendor’s lien and privilege in favor of the Homestead unless the' defects complained of were corrected. The seller undertook to cure the alleged title defects through the services of his own attorney.
Since the curative work was quite complex, seller and purchaser executed several written extensions of the date for passage of the act of sale, extending the date from July 1, 1978 to July 31, 1978 and then to November 15, 1978. Campo’s attorney was unable to complete the curative work to the satisfaction of the Homestead’s attorneys by November 15, 1978, and the parties did not execute any further agreements extending the date for passage of the act of sale. Campo did not tender title on November 15, 1978 nor on any subsequent date.
On February 12, 1979 Campo addressed a letter to Gertrude Gardner, Inc., authorizing the return of the deposit to Mr. and Mrs. Gonzales but denying that the sale was not concluded because of seller’s failure to deliver a merchantable title. The deposit was refunded to the purchasers and Gertrude Gardner, Inc. then filed suit to collect its real estate agent’s commission claimed to have been earned upon the signing of the agreement of sale and purchase.
In support of a motion for summary judgment, plaintiff filed affidavits of the purchaser and broker, and documents [1] reflective of the transactions of the parties. In opposition to the motion for summary judgment defendant filed an affidavit alleging his continued willingness to convey title, a description of the curative title work carried out by his attorney, together with the allegation that Campo understood that the purchasers were no longer interested in purchasing his property and that he consented to the refund of the purchaser’s deposit in the belief that this would bring the entire matter to a close, with the agent abandoning any claims for a commission.
On appeal Campo asks for a reversal of the summary judgment and requests that this case be remanded for a trial on the merits urging that there are genuine issues of material fact. He further urges in defense to suit that a real estate broker is not entitled to recover a commission when the real estate transaction is not consummated due to a lender’s refusal to accept title, nor *683 is the broker entitled to recover a commission if the vendor makes reasonable efforts to cure alleged title defects. Finally, Cam-po claims that plaintiff waived its claims for commissions when it refunded the deposit to the purchasers.
Both plaintiff and defendant rely upon the decision of Leaman v. Rauschkolb, as controlling in our determination of liability for the payment of an agent’s commission when a sale of real property is not consummated due to the failure of vendor to deliver a merchantable title. 1 So.2d 338 (La. App., Orleans, 1941). In the Leaman case the broker located a purchaser for defendant’s property, a purchase agreement was executed predicated upon homestead financing with the seller agreeing to pay a stipulated real estate commission. The purchasers obtained a homestead loan commitment, the homestead’s attorney notified the seller that the title to the property was defective, the seller refused to recognize the defects and maintained that he had good and marketable title and nothing further was done either by seller or purchasers until the agent brought suit to recover his commission, alleging the commission was earned upon the signing of the agreement of sale and purchase. In granting judgment in favor of the real estate broker the court reasoned as follows:
H< sfc
“We discern, therefore, that it is the view of the Supreme Court that agency contracts of this kind should be interpreted to mean that the vendor hires the real estate agent with the intention of becoming liable for a commission only in the event a sale of the property is consummated; that explicit provisions to the contrary contained in the contract will not be enforced, since, to do so would lead to an absurb consequence and that the vendor is not responsible for a commission in the event the sale is not consummated unless (1) it appears that he, the vendor, was at fault in that he refused to convey the title to the purchaser without cause or (2) unless he is unable to consummate it because his title, at the time he agreed to sell, was not marketable.” (Emphasis Supplied). 1 So.2d 338 at 341 (La.App., Orleans, 1941).
The Court cited the Supreme Court decision of Mathews Bros. v. Bernius, 169 La. 1069, 126 So. 556, and reaffirmed that the right of the agent to a commission is not in any way dependent upon the validity of his principal’s title and, quoted the wording of the Supreme Court:
“The broker, in such a case, in the absence of notice to the contrary, has the right to act upon the assumption that his principal has a marketable title.”
Campo argues that his case is distinguishable from the Leaman case because he made substantial good faith efforts to cure the alleged defects in his title. We cannot agree with this distinction. Since the right of the agent to a commission is not in any way dependent upon the validity of his principal’s title the good faith of the seller in attempting to cure an unmarketable title is immaterial. Moreover, the facts in this case are even more compelling in favor of the agent than in the Leaman case. The purchase agreement contains the following language:
“The seller shall deliver to purchaser a merchantable title, and his inability to deliver such title within the time stipulated herein shall render this contract null and void, reserving unto purchaser the right to demand the return of the deposit from the holder thereof, and reserving unto agent the right to recover commission.” (Emphasis supplied.)
Although the agreement relieves the seller of any additional liability to purchaser other than the return of the deposit should seller’s title be unmerchantable, the agreement clearly obligates the seller to pay the agent’s commission under those circumstances. We find no language that allows seller to escape this liability because of good faith efforts to cure title defects.
Campo further argues that the broker waived its claim for commission when it returned the deposit to purchasers even though Campo consented to same. Under *684 the provisions of the agreement earlier cited, the purchaser is entitled to demand the return of the deposit from the broker should seller be unable to deliver a merchantable title and the agent is not entitled to deduct his commission from the deposit in such a case. It is only in the event that purchaser breaches his contractual obligations that purchaser’s deposit may be forfeited and the agent’s commission deducted therefrom. The specific language of the purchase agreement dealing with the purchaser’s default reads as follows:
“In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso-facto, forfeited, without formality beyond tender of title to purchaser; or the seller may demand specific performance.
“In the event the deposit is forfeited, the commission shall be paid out of this deposit, reserving to the seller the right to proceed against the purchaser for the recovery of the amount of the commission.”
Campo has never contended that the purchaser was in default nor did Campo declare the deposit forfeited nor did he tender title to purchaser or demand specific performance. In the absence of seller taking the required action to declare the deposit forfeited, the agent had no right to claim its commission out of the deposit.
Campo may not use the waiver of his procedural rights provided by the terms of the purchase agreement to create a waiver of plaintiff’s right to its real estate commission.
Our review of the entire record convinces us that no genuine issues of material facts exist. We find that plaintiff was entitled to judgment as a matter of law.
The decision of the trial court granting summary judgment in favor of the plaintiff is affirmed. All costs of this proceeding are to be paid by the defendant.
AFFIRMED.

. The documents consist of the letter to the Homestead from its attorney, setting forth ten areas of corrective title work; a copy of the listing agreement; copies of the time extensions for the act of sale; a copy of a letter from the Homestead attorney to the defendant’s title attorney setting forth suggested areas of correction; and a copy of a letter from the defendant to the plaintiff regarding the purchaser’s refund.