DOUCET, Judge.
This is an appeal from a judgment dismissing the third party demand of an uninsured motorist carrier against the insurance agent who wrote the policy, and his errors and omissions insurance carrier.
The relevant facts with regard to the issuance of uninsured motorist coverage are, for the most part, not in dispute. Ronnie Bradford is a stockholder in, and manager of, the Ronnie Bradford Insurance Agency (the Bradford Agency). For a number of years before opening his own agency, he wrote insurance for another agency. In that connection, he obtained insurance policies for the Pitts family for a number of years. In 1984, after the opening of the Bradford Agency, Ray Pitts, Sr. called Bradford for a quote on automobile liability insurance. Bradford quoted a rate based on $500,000 in single limit liability coverage per vehicle and $25,000 single limit uninsured/underinsured motorist coverage as well as a million dollar “umbrella” policy. Bradford went to Pitts, Sr’s, office to discuss the coverage and rate.
Bradford prepared an application for insurance and when, after several days passed without Pitts, Sr’s, coming in to the Agency to sign the application, Bradford had the application signed by his secretary, Linda James. There is some dispute as to his authority for this act. Pitts, Sr., in his deposition taken in February 1986, stated that he could not remember any discussions with regard to the policy, that too much time had passed. Bradford testified that Pitts, Sr. told him to “handle” the application so that coverage might be obtained.
The application was submitted to the Hartford Casualty Insurance Co. (Hartford). Insurance was issued as outlined above.
On August 23, 1985, Ray Pitts, Jr. was injured in an accident with Terry Bailes, while driving a vehicle belonging to his father, Ray Pitts, Sr. The Pitts sued Bailes for injuries sustained in the accident. *824 The Pitts further brought suit against Pitts Sr.’s uninsured motorist insurer, Hartford. Hartford brought a third party demand against the Bradford Agency and its errors and omissions insurer, National Union Fire Insurance Co. (National Union). Hartford alleged that the negligent acts of the Bradford Agency in connection with the selection of lower UM limits on behalf of Ray Pitts, Sr. resulted in additional liability in the amount of $475,000 in uninsured motorist coverage over the $25,000 in coverage in the policy.
Hartford settled its claim with the Pitts and reserved its rights against Bradford and National Union. The third party demand was severed from the main demand.
A trial on the third party demand was held on August 16, 1988. The trial judge found no negligence on the part of the Bradford Agency and dismissed Hartford’s third party demand. Hartford appeals.
The first issue which must be disposed of is whether the Bradford Agency had authority to act on behalf of Ray Pitts, Sr. in signing the insurance application. Whether authority was given is a question of fact. Doll v. Russo, 7 So.2d 406 (La.App.Orleans 1942). As a result, the trial court’s decision in this regard will not be disturbed in the absence of manifest error. The trial judge found that Pitts, Sr. did, indeed, give the Bradford Agency authority to sign the application for insurance. After carefully examining the record, we find sufficient evidentiary support to furnish a reasonable factual basis for the trial judge’s determination. Therefore, finding no manifest error, we will not disturb this finding.
Having found that Pitts, Sr. did give authority to sign the application to the Bradford Agency, it must next be determined whether a sufficient written selection of lower limits of uninsured motorist coverage was made.
At the time the selection of lower limits was made in this case, La.R.S. 22:1406(D)(1)(a) read as follows:
“D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(l)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.”
While this statute has since been amended [1], our determination of this case is con *825 trolled by the statute in effect at the time of the selection, and the case law interpreting it.
Under the above cited statute, it has been held that:
“In order to effect a valid selection of lower UM limits, the selection must be in writing and signed by the named insured or his legal representative. A document evidencing a selection of lower limits must be clear and unambiguous. Moreover, the statute imposes UM coverage “notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment.” Roger v. Estate of Tad Moulton, 513 So.2d 1126 (La.1987), rehearing granted on other grounds, (La. June 24, 1987).8”
Giroir v. Theriot, 513 So.2d 1166 (La.1987). (Footnote omitted).
In this case the trial judge found that the selection was not sufficient because it was not made on a separate form as required by Hartford’s internal operating procedures and by Louisiana law.
However, at the time the selection was made in 1984, there was no requirement in our law that the selection be made on a separate form supplied by the insurer for that purpose.
In the case of McCall v. Nguyen, 509 So.2d 651 (La.App. 3rd Cir.1987), this court dealt with a case where, as here, the insured (here his representative) signed only an application for insurance and not a separate form selecting lower limits of UM insurance. In both eases, a blank was provided on the application form for a U.M. coverage amount to be filled in. In both cases, the amount was filled in by hand, in this case with the amount of $25,000.00. Also included in the applications was a space for the applicant to sign to reject UM coverage, which, in both cases, was left unsigned. In McCall v. Nguyen, it was held that the selection of lower limits was clearly indicated by the fact that the blank space was filled with handwritten figures, and that the application was signed. See also: Bird v. Daniels, 508 So.2d 611 (La.App. 2nd Cir.), writs denied, 513 So.2d 825 and 513 So.2d 828 (La.1987). No separate selection was required. The form of selection being exactly similar, we find no reason to rule differently in this case.
Since we have found that a proper selection of lower limits was made by one with authority to do so, there was no negligent act on the part of the Bradford Agency. We need not reach the issue of whether any action of the Bradford Agency caused Hartford to incur additional liability.
For the above stated reasons, the judgment of the trial court dismissing Hartford’s claim against the Bradford Agency is affirmed.
AFFIRMED.
KNOLL, J., dissents and assigns reasons.

. Act 436 of 1987, effective September 1, 1987, amended 22:1406 to read, in pertinent part, as follows:
"D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(l)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as *825 provided in this Subparagraph unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates.
(ii) After September 1, 1987, such rejection or selection of lower limits shall be made only on a form designed by each insurer. The form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto."