320 So.2d 590 (1975)
DENNIS MILLER PEST CONTROLS, INC.
v.
Mrs. Germaine WELLS, d/b/a Arnaud's Restaurant.
No. 6735.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1975.
Rehearings Denied November 11, 1975.
Writ Refused January 7, 1976.
*591 Richard K. Dimitry, Stephen C. Hartel, Jr., New Orleans, for plaintiff-appellee.
George J. Kambur, New Orleans, for defendant-appellant.
Before SAMUEL, REDMANN, STOULIG, SCHOTT and MORIAL, JJ.
STOULIG, Judge.
Plaintiff, Dennis Miller Pest Controls, Inc., obtained a judgment of $801, representing the balance due on a written contract for pest control service, plus 25-percent attorney fees on the award, against Arnaud's, Inc.[1] Defendant has appealed urging, as it did in the trial court, that Karl Fuller, who allegedly signed as defendant's agent, had no authority to contract for defendant.
The agreement, dated March 19, 1973, stipulates plaintiff would provide extermination service on a monthly basis for a one-year period to three pieces of property owned either by defendant or its president, Mrs. Germaine Wells, for $89 per month. Signed by Fuller and plaintiff's president, Dennis Miller, the contract stated the property owner's refusal either to pay for or accept proffered services would constitute a breach and accelerate the balance of the payments due.[2]
Plaintiff serviced the three buildings for several months and was paid each time the job was finished. Thereafter Mrs. Wells, without assigning a reason, refused to accept further service. What is at issue is the nature of the March 19 agreement and the capacity in which Fuller acted in connection with its execution. Plaintiff contends Mrs. Wells gave Fuller a verbal mandate to sign a contract binding defendant to accepting monthly service for a one-year term, while defendant insists either party could terminate the agreement at any time.
Dennis Miller testified that in response to a call from soneone connected with defendant he visited Mrs. Wells in her apartment on March 19, 1973 and discussed the terms of the disputed agreement in Fuller's presence. He informed Mrs. Wells this agreement would be the same as a prior arrangement under which plaintiff had provided extermination service for the three buildings. After Miller distributed mice poison in the apartment, he asked Mrs. Wells to execute the contract and she told him Fuller would sign it. Fuller signed the contract and also a receipt indicating the extermination work had been completed.
Mrs. Wells repudiated Miller's statement by denying ever meeting him much less discussing a contract with him or giving a verbal mandate in his presence. The trial judge resolved the credibility issue against her because Fuller, her steward, confirmed Miller's meeting with Mrs. Wells in her apartment. In fact, he testified he escorted Miller to the apartment.
*592 However, Fuller stated he did not hear Mrs. Wells tell Miller that he was to sign the contract on her behalf. In fact Fuller insisted he had no authority whatsoever to enter into a contract. It is apparent from his testimony he does not understand the meaning of the term "contract"; therefore his testimony must be carefully weighed to determine the scope of the authority that Mrs. Wells conferred on him as her agent. He was questioned repeatedly as to what he had signed to determine if he was simply receipting for service performed on that day or if he was signing for plaintiff's service for an extended period of time on a monthly basis. His testimony was somewhat confusing and at one point the court asked: "What did you think you were signing?" He answered: "I thought I was signing a little paper for him to come in and do the past control every month."
In summary we accept the trial court's credibility finding that a contract was negotiated between Miller and Mrs. Wells and that she had given Fuller a verbal mandate to sign for her.
The evidence discloses that on March 19, 1973, Fuller executed two documents: the contract at issue, and an acknowledgment of the past control service rendered by plaintiff. He admitted that one of the documents was a written authorization for plaintiff to perform extermination service in the future, i.e. a contract. If, as Fuller testified, Mrs. Wells did not authorize him to sign these documents and further that he never signed anything for the defendant unless expressly authorized to do so in each and every instance, he failed to state by whose authority he acted in this matter in signing these documents.
Defendant argues that if the testimony to this effect is accepted, the record still fails to support the agency by competent evidence. It correctly points out that C.C. art. 2992 (which permits a verbal mandate) stipulates the proof of the agency must conform to rules set forth in the Civil Code section "Of Conventional Obligations".
The only article dealing with testimonial proof of contracts is C.C. art. 2277 that provides, inter alia, verbal contracts for the payment of money in excess of $500 must be established by the testimony of one credible witness and other corroborating circumstances. In Gardes v. Schroeder & Schreiber, 17 La.Ann. 142 (1865), the Supreme Court held that a verbal power of attorney conferred for executing a contract in excess of $500 must be established by the same evidence as would be required for a verbal contract in excess of that amount.[3]
While we agree with defendant's position that plaintiff must establish the verbal power of attorney by the testimony of one credible witness and other corroborating circumstances, we cannot conclude it did not sustain its burden of proof. The credible witness is Miller and the corroborating circumstance is the testimony of Fuller to the effect that he was signing a paper to let plaintiff come in every month to do pest control work and that he never signed for anything for defendant without specific authorization. The corroborating circumstances contemplated by C.C. art. 2277 can be the testimony of a second witness.[4] We therefore conclude that Fuller was acting as the agent of the defendant in executing the pest control contract.
Though not raised as an issue in either the briefs or oral arguments of counsel, the dissenting opinion, while acknowledging that the defendant did breach the pest control agreement, suggests the trial court erred in awarding plaintiff the penalties and attorney fees stipulated in the written *593 contract. Such a result can only obtain upon a finding that defendant had no knowledge of the liquidated damage clause and that the agent exceeded his authority in signing the contract with such provisions, or that the amount of the stipulated damages are so exorbitant as to be unconscionable and will not, for equitable consideration, be invoked. In effect the dissenting opinion while admitting the breach would permit the defendant to do so with total impunity.
A resolution of this issue requires a reiteration of the established law, jurisprudential and statutory, governing the right of persons to contract. In general, parties may contract under such terms and conditions, not in contravention of statutory law or contrary to public policy, as may be mutually agreed upon. Such agreements have the effect of law between the parties governing its subject matter and cannot be repudiated for economic or imprudent reasons. McNeely v. Baron Construction Co., 261 So.2d 333 (La.App. 4th Cir. 1972); C.C. art. 1945. Penal clauses (liquidated damages and attorney fees) are the proper subject matter of contractual agreement. C.C. art. 2117 et seq. Unequal or unilateral contingent penalties imposed for the breach of contract are not contrary to public policy, prohibited by law, or void for the want of mutuality. Wendel v. Dixon Real Estate Company, 232 So.2d 791 (La.App. 4th Cir. 1970); C.C. art. 2122. Though a contract be silent on the assessment of liquidated damages against one of the contracting parties, the opposite party is not precluded from recovering such damages as are authorized by the Civil Code and which are occasioned by the former's breach of the agreement.
To dispose of the issue of the enforceability of the penal clauses we must determine if defendant had, or is charged with, the knowledge of the penal provisions, if the agent exceeded his authority and if the stipulated amount is unreasonable.
At the outset it should be noted the testimony of the president of plaintiff corporationthat he offered a copy of the contract to Mrs. Wells for her acceptance and signature and was advised by her that Fuller would sign itwas accepted by the trial judge and was a credibility determination. Thus the opportunity afforded Mrs. Wells to learn the full details of the contract and her mandate to Fuller to sign on her behalf were so concomitant and contemporaneous that they will be treated together.
C.C. art. 2995 differentiates between a restricted as opposed to an unlimited power of attorney. It states:
"It may vest an indefinite power to do whatever may appear conducive to the interest of the principal, or it may restrict the power given to the doing of what is specified in the procuration."
In this case Mrs. Wells gave her steward Fuller unlimited discretion in signing the contract and approving any terms contained in it when she declined Miller's offer to view it and indicated Fuller would sign for her. Thus, even though the record contains no evidence that she specifically agreed to the acceleration clause or the attorney fees in the event of a breach, her conferring on Fuller the power to act in her behalf without limitation in this transaction binds her to the terms of the contract signed by her agent. Defendant cannot now be heard to deny that she had knowledge of, or consented to, the penalty provision and attorney fees any more than she could have asserted such a defense if she had signed the contract without reading it.
Under the penalty provisions of the contract, plaintiff is given the option to accelerate all unpaid amounts due for the remainder of the contract year dating from the occurrence of the breach together with reasonable attorney fees. The liquidated *594 damages are only the balance of the proceeds due under the contract, an amount defendant had initially obligated itself to pay for plaintiff's service, the performance of which it prevented by the breach. It cannot validly be maintained that plaintiff is only entitled to the loss of the profit it would have derived from the contract had it not been breached in view of the mutually agreed upon provisions stipulating the amount to be awarded in the event of such an occurrence. Nor can it be said that the stipulated amount is so unreasonable and out of proportion to the total consideration of the contract that its enforcement would be unconscionable.
For the reasons assigned, the judgment appealed from is affirmed. Defendant Arnaud's, Inc., is to pay all cost of this litigation.
Affirmed and rendered.
SCHOTT, Judge, with whom REDMANN, Judge, joins, dissenting.
The contract between plaintiff and defendant for pest control service is titled, in large bold-face capitals, "PEST CONTROL SERVICE ORDER." It contains the following:
"In consideration for the services to be rendered by the Contractor, Owner shall pay Contractor $1,078.00 per annum, payable $89.00 when the first treatment is applied and $89.00 per month on the first of each month thereafter during all times that this contract is in effect. * * *
"Failure or refusal of the owner to allow the Contractor access to the aforesaid premises or failure to make any payment when due shall constitute a breach hereof and, at the option of the Contractor and without the necessity of tendering further services, shall accelerate maturity of all amounts then remaining due and unpaid for the contract year then running.
"Should it become necessary for the Contractor to consult or engage counsel to protect, or enforce any of Contractor's rights hereunder, Owner agrees to pay the fees of the attorney engaged for such purposes which are hereby fixed at $25.00 or 25% of the amount due whichever is the greater."
Plaintiff had performed and was paid under the contract for three months, so that the trial judge awarded plaintiff nine months at $89 per month together with 25% as attorney's fees in accordance with the contract. Assuming that authority to sign a "Pest Control Service Order" was authority to sign a service contract for a long them, there is no question but that defendant breached the contract and is liable to plaintiff in damages, but the issue is then whether plaintiff is entitled as a matter of law to recover the amount he was awarded by the trial court.
In the first place, pretermitting the question of whether such penal clause is enforceable under the circumstances the burden of proof was on plaintiff to show that Mrs. Wells had entered into a valid contract obligating herself to the penal clause when she told plaintiff's representative that her restaurant's steward would sign the contract. In order to answer this question I would completely disregard the testimony of Mrs. Wells and the steward since the trial judge apparently assigned no credibility to their testimony whatsoever. Taking the testimony of plaintiff's representative, Dennis Miller, as true we have only the following:
A. ". . . When I finished putting out the stuff I told Mrs. Wells, I said, `Mrs. Wells, I have a contract to be signed, would you sign it' and she said, `no, Mr. Stewart will sign it' so when I finished we went on down
* * * * * *
Q. "He signed the contract that you have?

*595 A. "And he signed the service ticket also, both of them."
* * * * * *
THE COURT:
"How did it happen that these premises were included?"
A. "The reason the premises were included because that is the way it was serviced before years back, it has always been serviced with these buildings.
BY MR. DIMITRY:
Q. "Was there any mention made of this at the time of your dealings with Mrs. Wells on March 19th, 1973?"
* * * * * *
A. "All I did was I told her I would write the same contract, put it the same way."
THE COURT:
"You did mention the contract?"
A. "I did mention the contract, I had the contract and I said it is going to be the same way and she said yes."
Q. "And Mr. Fuller signed the document which you identified as Plaintiff Exhibit I?"
A. "He signed two documents that day, yes."
Q. "And you also signed the contract that day?"
A. "Yes."
* * * * * *
BY MR. KAMBUR:
Q. "Mr. Miller, as I understand it now you did not mention "contract," to Mrs. Wells but you told her it was going to be the same way?"
A. "No, that is not true, I was talking about it and I showed it to her, the contract and I said `Mrs. Wells do you want to sign the contract?"
"And she said no, Mr. Fuller will sign it."
Q. "Didn't you say when you told me you didn't mention the contract that you had the contract in your hand and you waved your hand around?"
THE COURT:
"There wasn't any meaning in his waving his around."
MR. KAMBUR:
"He just did it with his hand. What did you mean when you said "I didn't mention the contract" just a new minutes ago?"
A. "The service will be the same as it was before."
Q. "You didn't mention the word `contract'?"
THE COURT:
"He said he had a contract. I am not going to permit you to badger the witness, I think he testified clearly and all you're doing now is confusing him."
"The Court understands that after taking the testimony of the witness that during the discussions the contract was not mentioned at the time he was in the presence of Mrs. Wells but that he had a contract which he told her was the same as the previous contract and this is the document that he had when he was in the apartment of Mrs. Wells, that is my impression."
A. "Let me say this, what I said when I came in, she said," I was having a lot of trouble with some mice and I want you to take over the business again, to do the service again for me." And I said all right, it will be the same and that's what I was talking about, I didn't mention "contract," then but when I finished I *596 went to put the mice poison out and so forth and I told her"
BY MR. KAMBUR:
Q. "You went back into her apartment?"
A. "It was all done in her apartment, nothing was done in the restaurant at that time, she was still there and I said "Mrs. Wells, do you want to sign this contract, I said I have a contract here, do you want to sign it and she said "No, Mr. Fuller will take care of it."' I don't know if she said he will take care of it or"
Plaintiff failed to offer the previous contract in evidence and there is no showing in the record that the penal clause in the previous contract was the same as the one which was sued on.
In effect, plaintiff's suit is based upon a mandate from Mrs. Wells to the steward which must be evaluated in the light of LSA-C.C. Art. 2997 to the effect that a power of attorney to sell or to buy must be express and special. To the extent that the steward's mandate was to order pest control services from plaintiff the evidence shows that it was sufficient, but there is no evidence to show that the mandate encompassed liability for the penal provisions of the contract.
The case of Summer v. Knighten, 1 So.2d 142 (La.App. 2nd Cir. 1941) is pertinent. The Court said:
"A fundamental principle of law of this state is that the authority of an agent to execute notes or other commercial paper on behalf of his principal must be express and special. Civil Code, Article 2997 [citations omitted]. It has been held, however, that the granting of such authority is implied when the main object of the agency requires the exercising of that power."
There the Court considered whether the general manager of a mercantile store who was empowered to do business with a bank under the mandate "to sign all contracts and checks" had the authority to obtain loans and execute notes for his employer, the defendant. The Court, in holding that this authority did not include such authority, did so with the recognition that the manager did have authority to enter into contracts arising in the usual course of the store's operation.
The steward of defendant was not even the general manager and operated under no written mandate, like the one in the cited case. The penal clause of the contract which plaintiff seeks to enforce here is really in the nature of a note for $1078 payable in 12 installments. The same result should follow here as in the cited case.
Had plaintiff shown that defendant was aware of the provisions of the penal clause when she told the steward to sign the contract, either because she read the contract or because the previous contract she had entered into with plaintiff had contained the same provision, it might be argued that the penal clause was enforceable, but in my opinion the jurisprudence still indicates otherwise.
Under the terms of the contract, plaintiff obligated himself to perform pest control services over a 12 month period. He was to treat the premises to eradicate or prevent infestation on some regular basis and as needed. Surely he would incur some expense in the performance of his obligations and would earn the contract price with some built in profit had he been permitted to perform. I find no authority for the proposition that he is entitled to collect the full amount of his contract while at the same time he will perform no obligations for a full nine out of the twelve months that the contract was to have run.
In Tac Amusement Company v. Henry, 238 So.2d 398 (La.App. 4th Cir. 1970) this Court rejected a claim for liquidated damages saying that the proper measure of *597 damages would be the loss of proceeds from a minimum performance plaintiff might have provided and that the liquidated damages were far in excess of hoped for profit from a voluntarily maximum performance. We held that the disproportion was so serious and great that it was in conflict with C.C. Art. 2164.
The amounts involved in the last cited case were extremely high in comparison with the instant case, but the principle must remain the same. Plaintiff, because of defendant's breach, was liberated from any and all further concern with obligations he had undertaken under this contract, and yet he would recover the same gross amount as he would have had he been obliged to perform. Under the circumstances I would hold that there is a serious disproportion and disallow such recovery.
In Federal Sign System (Electric) v. Leopold, 120 So. 898 (La.App. Orl. 1929) this Court was faced with a claim for liquidated damages of $14 per month for the term of the contract where the plaintiff agreed to supply an electric sign to defendant for $27.15 per week. In holding that plaintiff was entitled to recovery the Court observed:
"If he defaulted, he paid damages at the rate of $14 per month, or about 12 percent, of the former rate, a fairly reasonable profit, considering the expense of installation.
"The greater the duration of use of sign, the less liquidated damages would be due.
"The case of Godwin v. Davidson et al. 163 La. 804, 112 So. 728, cited by appellant, is not in point. There the bond provided a penalty of $5,000 for its breach. The contract was almost completely performed. The damages were assessed or fixed in a lump sum, not so much for each day, week, or month, or year. Since the contract was partially performed, the court properly held that plaintiff was not entitled to the entire $5,000, but would have to prove his damages.
"Here the amount defendant had to pay was commensurate with the period of his default, and it is certainly reasonable."
Thus the Court considered reasonableness and arrived at the conclusion that plaintiff was entitled to recover in the cited case. In the instant case, not only is there no evidence to show that recovery of the full amount was reasonable but reasonableness dictates otherwise.
It has been stated that liquidated damages serve the purpose of fixing a sum certain for damages where they are difficult, if not impossible, to compute. In the instant case no attempt was made in the contract to relate the penal provisions with liquidated damages in the sense of a substitute for actual damages, but on the contrary they provided merely for full contract price on default. At the trial plaintiff offered no evidence to show actual loss of profit and there is no basis for awarding him any recovery under those circumstances. Therefore, I would reverse the judgment of the trial court and dismiss plaintiff's case.
NOTES
[1] Several persons and business entities were cited as defendants; however, it was stipulated at the trial Arnaud's, Inc., was the proper defendant. Plaintiff by supplemental petition sought in the alternative to hold Fuller individually liable should the court determine he was not acting as defendant's agent. The judgment of the trial court did not dispose of the alternative pleading nor was issue joined either by answer or default. Plaintiff did not appeal this issue.
[2] The contract provides in part:

"Failure or refusal of the owner to allow the Contractor access to the aforesaid premises or failure to make any payment when due shall constitute a breach hereof and, at the option of the Contractor and without the necessity of tendering further service, shall accelerate maturity of all amounts then remaining due and unpaid for the contract year then running."
[3] See Comment, 23 Tul.L.Rev. 242, 244, dealing with "Construction of Powers of Attorney in Louisiana."
[4] Rogers v. Barton, 264 So.2d 715 (La.App. 1st Cir. 1972).