443 So.2d 697 (1983)
JAMES M. VARDAMAN & CO., INC.
v.
L.B. PONDER, Jr.
No. 83CA0163.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
Writ Denied March 9, 1984.
E.B. Dittmer, II, Bogalusa, for plaintiff-appellant.
J. Lynn Ponder, Amite, for defendant-appellee.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
James M. Vardaman & Company, Inc. (plaintiff) seeks to recover, either on the basis of quantum meruit or commission, for services rendered to L.B. Ponder, Jr. *698 (defendant) in connection with a proposed sale of timber belonging to the latter and situated in Tangipahoa Parish.
Plaintiff specializes in the management of timber lands and sales of forest products. Its Bogalusa representative is O. Aaron Rawles. Rawles had satisfactorily concluded previous timber sales with Ponder under procedures similar to those involved in this case. Initially, Rawles performed a timber survey, defined the property boundaries, marked the timber to be cut, estimated the volume in board feet, and suggested the anticipated monetary return to the owner. If the owner told him to proceed, Rawles would prepare all details for receiving sealed bids from prospective purchasers. If an acceptable bid was obtained, plaintiff would receive a commission of either 10% or 8% of the sale price, depending upon whether it supervised the cutting. No written documents were ever executed containing the terms of these broker agreements or stating whether the broker's commission was earned upon securing a ready, willing and able purchaser or upon a sale.
In March of 1978, Rawles undertook the inspection of four tracts of land owned and/or supervised by Ponder. Following the above procedures, Rawles received two sealed bids on three of these tracts. Both bids were rejected because the parties agreed they were too low. Rawles then asked for and was given authority to seek a negotiated bid from Crown-Zellerbach (CZ).
Rawles obtained a verbal offer from CZ in October, 1978, to purchase the timber on three of the tracts (A, C and D) for the total sum of $88,494.00. A timber deed was prepared and forwarded to Ponder for his signature and that of August E. Cefalu, a co-owner of one of the tracts. The owners signed the deed and forwarded it to Rawles for submission to CZ. Accompanying the deed was a request from the owners to have CZ's payment broken down in the amounts of $8,849.40 to Vardaman, $19,057.00 to Cefalu, and $60,587.60 to Ponder. The deed was returned to the owners because it had not been properly witnessed and notarized.
On November 3, 1978, Lee Alford, Timber Procurement Manager for CZ, advised Rawles that he had been advised by CZ's attorney that the subject property was burdened with a federal tax lien recorded against Ponder. Rawles relayed this information to Ponder who wrote Alford informing him that the "I.R.S. does not enforce [the lien] as to timber, which is (sic) movables, after cut...." Various efforts during the next three months to get a written release from the I.R.S. proved futile, although W.A. Rauch, the Internal Revenue Service agent involved, did agree orally not to pursue the timber in satisfaction of the lien according to Rawles and Ponder.
On February 1, 1979, based on the refusal of the I.R.S. to execute a written release of the timber, CZ notified Rawles that it had withdrawn its offer to purchase the timber. Plaintiff's suit to recover for services rendered was filed on July 31, 1979.
The trial court found that the tax lien was not a bar to the sale and that "there [was] no evidence that I.R.S. (Rauch) would not release the timber in consideration of a direct payment of Ponder's share of the proceeds." For those reasons, plaintiff's claim was denied and its suit dismissed.
The brokerage contract between Vardaman and Ponder involved the payment of money where the value exceeded $500.00. Under La.C.C. art. 2277, such agreements which are not reduced to writing must be proved "at least by one credible witness, and other corroborating circumstances." Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977). The existence of a contingency fee contract is amply proven here by the testimony of Rawles and Ponder, the documents and exhibits entered into evidence, and the fact that these parties had twice before engaged in this type of business arrangement with no problems. Both parties admit that the customary arrangement had been for plaintiff to receive a 10% commission if it supervised the cutting and an 8% commission if it did not. At exactly what point *699 (upon procuring a buyer or upon sale) this commission was "earned" was apparently never ironed out by the parties. There is insufficient evidence in the record to allow a court to make this determination. However, on reviewing the jurisprudence in Louisiana, we conclude that regardless of when the commission was payable, plaintiff is entitled to receive some commission under these facts. Plaintiff upheld its end of the contract when Rawles inspected and marked the trees to be cut on the tracts in question and negotiated the terms of a sale with CZ, all according to his discussions with Ponder. The testimony at trial established that Ponder (and his co-owner, Cefalu) agreed to the terms proposed by CZ and negotiated by Rawles. Furthermore, the evidence showed that they had signed the deed which had been sent to them. The sole reason that the sale was not eventually consummated was Ponder's inability to deliver a merchantable title to the timber. Standing timber is an immovable in Louisiana, and the sale of it must conform to the rules governing the sale of immovables. La.C.C. art. 462, 463. The federal tax lien attached to all of Ponder's property, including the timber, and rendered his title to it unmerchantable. 26 U.S.C.A. § 6321 (West 1967); Pierre v. Chevalier, 233 So.2d 61 (La.App. 4th Cir.1970), writ refused, 256 La. 253, 236 So.2d 31 (1970). A sale of the timber would have to comply with the requirements of La.C.C. arts. 2275 and 2440.[1] Article 2440 prohibits the admitting of testimony at trial to prove the existence of a verbal sale of an immovable. Article 2275 derogates from this rule a bit, deeming the sale "good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold." In this case, however, both parties admit that no sale, nor even a binding agreement to purchase, was ever entered into. Instead, the testimony at trial established that CZ would have entered into a binding purchase agreement but for the unmerchantability of Ponder's title. Since article 2440 only prohibits admitting "testimonial proof" of the sale of an immovable, we believe that the testimony admitted here to prove an agreement in fact (though not in writing) is admissible, and sufficient to prove that CZ was a "ready, willing, and able" purchaser. In Samuels, our Supreme Court permitted a real estate broker to recover his commission based on an oral agreement when the sale was not consummated because of the owner's actions, after finding that the requirements of La.C.C. art. 2277 had been satisfied.
It is well established under Louisiana law that an agent has earned his commission even if it is payable on sale, when he has obtained a purchaser who is ready, willing, and able to purchase the property under terms and conditions acceptable to the owner, notwithstanding that the sale is never consummated because the title is found to be unmerchantable. Eanes v. McKnight, 262 La. 915, 265 So.2d 220 (1972); Mathews Bros. v. Bernius, 169 La. 1069, 126 So. 556 (1930); Cooley v. Miller, 320 So.2d 317 (La.App. 3rd Cir.1975); Olympic Homes, Inc. v. Ory, 207 So.2d 258 (La.App. 1st Cir.1968), writ refused 252 La. 113, 209 So.2d 41 (1968); see also Joiner v. Lockart, 350 So.2d 199 (La.App. 3rd Cir. 1977), writ denied, 352 So.2d 240 (La.1977). Therefore, even if the terms of this contract called for the commission to be payable upon consummation of the sale, the fact that the sale was not closed due to the title defect renders Ponder liable for the commission.
*700 Since the timber was not sold to the purchaser Rawles had secured, he did not supervise the cutting, and therefore plaintiff is entitled only to an 8% commission. We note that Ponder and Cefalu mailed a letter to CZ regarding the manner of payment for the timber on the three tracts. The consideration for blocks A, C, and D was $14,294.00, $42,350.00, and $31,850.00, respectively, totaling $88,494.00. Since Ponder's testimony at trial that he and Cefalu each owned a one-half interest in Block C was uncontroverted, we find that 8% of the consideration for Block A, Ponder's interest in Block C, and Block D equals $5,385.52.
The judgment of the trial court is reversed, and judgment is entered for plaintiff in the amount of $5,385.52, with legal interest from the date of judicial demand. All costs of these proceedings are taxed to the defendant.
REVERSED AND RENDERED.
LANIER, J., concurs and assigns reasons.
LANIER, Judge, concurring.
I concur with the result.
The testimony of Lee Alford, the manager of Timber Procurement for CZ in 1978, shows that CZ verbally agreed to purchase Ponder's timber pursuant to the terms contained in the written act of sale (timber deed) which was prepared by Vardaman and signed by Ponder on or before October 24, 1978. This verbal agreement to purchase was properly proven at the trial by Alford's sworn testimony. La.C.C. arts. 2275 and 2440; Rubenstein v. Files, 146 La. 727, 84 So. 33 (1920); Larido v. Perkins, 132 La. 660, 61 So. 728 (1913); Perry v. Perry, 122 So.2d 829 (La.App. 1st Cir. 1960). This agreement to purchase would have been enforceable by Ponder against CZ (when proven by sworn testimony) except that on or about November 3, 1978, CZ discovered the tax lien during a routine title check. I do not agree with the implication of the main opinion that an agent has produced a "ready, willing and able" purchaser for his principal's property even though there is no enforceable agreement between the parties. Sykora, The Law of Real Estate Brokerage: The Broker's Commission, 41 La.L.Rev. 857, 878-915 (1981). To so hold would allow the agent to collect his commission even though an "empty sack" was delivered to his principal. Vardaman may recover in this proceeding because it did procure an enforceable verbal agreement to purchase and the evidence does not reflect that Vardaman had prior knowledge of the tax lien.

ON APPLICATION FOR REHEARING
PER CURIAM.
The decision of this court was rendered on November 22, 1983, and mailed that same date. This application for rehearing was filed on December 15, 1983. Pursuant to La.C.C.P. art. 2166, as amended by Act 451 of 1983 and effective August 30, 1983, an application for rehearing must be filed within fourteen days of the mailing of the notice of judgment and the opinion of this court. This application is not timely.
NOTES
[1] "Art. 2275. Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold."

"Art. 2440. All sales of immovable property shall be made by authentic act or under private signature.
Except as provided in article 2275, every verbal sale of immovables shall be null, as well for third persons as for the contracting parties themselves, and the testimonial proof of it shall not be admitted."