CARAWAY, J.
 

 h The plaintiff real estate broker sought to recover one-half of the commission paid to another real estate broker who represented the purchaser in the sale of three pieces of agricultural property. Plaintiff claims that an implied agreement to split the commission existed between them. The trial court denied plaintiffs claims on the grounds that no implied agreement between the two brokers occurred. Finding no manifest error in the trial court’s ruling, we affirm.
 

 Facts
 

 On January 6, 2006, a real estate sale of three tracts, comprising 16,000 acres of farmland in Catahoula Parish, was completed through the direct assistance of two real estate agents/brokers, Ron Wilkes, who represented the seller (John Phillips of Sicily Island Farms, Inc.) and Ralph McCurdy, an associate real estate broker acting under the brokerage license of Century 21 Shackelford-French, who represented the buyers (Ricky Condrey, et al).
 

 It is the events leading up to the sale of the property, however, which form the basis for this dispute. In February of 2005, George Price (“Price”), a real estate broker doing business through Price Farms, Inc., approached Wilkes regarding the properties for Price’s client, Larry Lawson. Lawson was interested in Bayou Louis North and Bayou Louis South, two of the Sicily Island Farms’ tracts of farmland comprising approximately 12,000 acres. In May of 2005, Lawson visited the tracts and declined to pursue the [2Bayou Louis South tract. The seller then made a third tract, the Robert White Farm, available for sale for Lawson’s consideration. Price represented Lawson through July 1, 2005.
 

 In the course of these dealings, Price and Wilkes prepared promotional packages containing information on the three tracts of land. On June 18, 2005, Wilkes forwarded a package to Ricky Condrey, the ultimate purchaser of the properties.
 

 On June 23, 2005, Price and McCurdy, who were acquaintances as brokers in the business, discussed “different pieces of property.” McCurdy told Price that he had a man from Texas looking for pasture land. McCurdy agreed to meet with Price the next day to view the Bayou Louis South tract. When the two men were looking at the land, Price mentioned the two other tracts of land that were up for sale. The present litigation rests primarily upon the two men’s differing recollections of what transpired during their June 23 and 24 discussions.
 

 McCurdy contends that following his meeting with Price, he approached Ricky Condrey the next day about the property. McCurdy claims that he never mentioned the Condreys to Price, and he insists that
 
 *1102
 
 he never agreed to split a commission with Price. Additionally, McCurdy was angered when he learned that Wilkes had already sent a package to Ricky Condrey, since McCurdy was known to represent the Condreys.
 

 To the contrary, Price claims that McCurdy told him at the June 24 meeting that McCurdy thought he might get Con-drey and John David Frith |sto buy the tracts. Price claims that the men agreed that the two were working together to arrange for a purchase of the land and would split any resulting commission. He also recalled that after the meeting, McCurdy stopped by his house. McCurdy allegedly told Price that he would give him a referral fee of $30,000, instead of a commission. Price claims that he declined that offer. Price conceded in his testimony that the two men had never “closed” a prior deal.
 

 Wilkes knew that McCurdy had a potential buyer, McCurdy’s Texas client, for the Bayou Louis South tract prior to June 24. On June 25, 2005, however, Wilkes sent a letter to his client, Phillips, regarding the possible sale of
 
 all three
 
 tracts to the Condreys. The letter reads in pertinent part as follows:
 

 I am writing this letter to you on Saturday, as I am going to be in Northeast Mississippi most of next week working on a land appraisal for the MSU Foundation. I received a call from Ralph McCurdy Thursday concerning a group of East Carroll Parish farmers that are interested in buying all of your remaining property. I had sent Ralph a package on the South Bayou Louis tract about a week ago, and he had talked to George Price and had found out about the North Bayou Louis and Robert White farm. I told him I would contact you to see if you wanted to pursue this possibility, but that I had to disclose to you who the prospective buyers are.
 

 It turns out that Ralph had contacted Rickey Condrey about the South Bayou Louis and Rickey told him that I had sent him information on the Robert White farm and that he is interested in that tract himself. He being Rickey.
 

 [[Image here]]
 

 I told Ralph that if you want to pursue this group as prospective buyers, I will leave him a package covering the property he doesn’t already have. He can pick it up at the office, while I am out of town next week. Apparently the group wants to buy all your remaining land in one transaction and then divide it up among the group. With all the various parties involved, I told Ralph that I thought it best to |4have a written agreement with you as to how much commission would be paid and how it would be divided. Speaking for Wilkes Real Estate, Charlie and I think 2% would be fair compensation for us. I suggest that Ralph McCurdy/George Price be paid 2%, with Ralph being responsible for compensating George. The prospective buyers are all very knowledgeable and I really don’t think anyone is going to be able to influence their decision on what to pay for the property.
 

 Price claimed that he had called Wilkes right after his meeting with McCurdy on the 24th. As shown by the June 25 letter to Phillips, Wilkes informed Phillips that a 2% commission would be a fair compensation to “Ralph McCurdy/ George Price.” Wilkes testified that he knew “they were communicating with each other behind the scenes,” although he was not aware of any written agreement between the two realtors.
 

 One week later, on July 1, 2005, Ricky Condrey, Wade Condrey, Jason Condrey
 
 *1103
 
 and John David Frith (“the Condreys”) entered into a purchase agreement with Sicily Island Farms, Inc., for the purchase of the three tracts of farmland. It was Wilkes who prepared the initial purchase agreement documents. George Price was not present for the execution of the purchase agreement. McCurdy did not sign the documents. Included in a preparatory document executed on July 1 was the following language:
 

 7. Wilkes Real Estate and Ralph McCurdy, Century 21 Shackelford-French represent the Seller as Seller’s Agents and shall be compensated 2% each of the purchase price at closing. Ralph McCurdy, Century 21 Shackel-ford-French, shall be responsible for compensating George Price, based upon an agreement between these parties.
 

 McCurdy raised no objection to this language.
 

 | sAfter the parties’ purchase agreement, Wilkes called Price immediately to let him know that a contract had been signed with the Condreys on the three tracts of land. Wilkes knew that Price’s client, Lawson, had planned possibly to submit a bid on Bayou Louis North and Robert White farm but that the Condrey contract would prevent such bid. Wilkes told Price that he had been mentioned in the purchase agreement “as a buyer’s agent working through Ralph.” Price interpreted the phone call as congratulatory.
 

 A second buy/sell agreement, prepared by an attorney-partner of Phillips, was confected on September 21, 2005. Wilkes recalled that he and McCurdy had input into the document, and at that time, McCurdy made it clear that Price was not entitled to a commission. An indemnity provision in the second agreement entitled “Commission and Finder’s Fees,” stated:
 

 A real estate commission of 4% will be paid out of sale proceeds at the closing. Wilkes Real Estate is the Seller’s agent and will be paid 2% of said 4% by the closing attorney and Shackelford-French is the Buyer’s agent and will be paid 2% of said 4% at closing by the closing attorney. Century 21 Shackel-ford-French shall be responsible for compensation, if any, due George Price. Buyer holds seller harmless for any additional Buyer’s agent real estate brokerage claims other than Century 21 Shackelford-French. Seller holds Buyer harmless for any additional Seller’s agent real estate brokerage claims other than Wilkes Real Estate. Wilkes Real Estate and Century 21 Shackelford-French shall hold Seller harmless from all claims, actions, compensation and damages directly or indirectly arising from compensation due or alleged to be due to George Price. This agreement under this paragraph shall survive the closing.
 

 Wilkes and McCurdy acknowledged this provision with their signatures.
 

 At the January 6, 2006 closing, Price made a written demand against the parties that a portion of the commission be paid to him or placed into |ñescrow. In the end, however, no commission was paid to Price. Wilkes and McCurdy each divided the 4% commission from the sale price of $16,000,000.00.
 

 Price Farms, Inc. instituted suit against McCurdy and Century 21 Shackelford-French (“Defendants”) to collect the one-half of the 2% commission paid to McCur-dy raising claims of breach of an implied contract, breach of trust and fiduciary duty by a joint adventurer, unjust enrichment and procuring cause. McCurdy answered the suit and filed a reconventional demand against Price seeking damages and attorney fees for unlawful interference with a real estate brokerage relationship. Defendants sought summary judgment seeking
 
 *1104
 
 dismissal of all claims. After receiving arguments from counsel without evidence or testimony, the court partially granted summary judgment in favor of defendants on the issue of the existence of an oral contract. Nevertheless, the court ruled that Price Farms would be allowed to proceed on the alternative theory of implied contract.
 

 The case was tried before the district judge with Price, Wilkes and McCurdy testifying. After the presentation of testimony and documentary evidence, the trial court orally ruled as follows:
 

 However, there was no written contract. There’s no oral contract. As far as an implied contract you have to prove that by a preponderance of the evidence. And for the argument, I agree with the position of the defendants here. It just hasn’t been proven by a preponderance of the evidence ... There’s absolutely no meeting of the minds here on these points. So I find that — I find for the defense here.
 

 The written judgment, filed October 1, 2009, dismissed both the plaintiffs and defendants’ claims with prejudice. This appeal by Price ensued.
 

 17Price argues that the trial court erred in failing to find that an implied contract to share the commission existed between him and McCurdy based upon the undisputed testimony of Wilkes, a disinterested participant in the transaction, and the actions of Wilkes in failing to complain about the mention of Price in the purchase agreements. In the alternative, Price argues that a joint venture existed between the two brokers, thus entitling him to one-half of McCurdy’s commission. Price also raises issues regarding the trial court’s refusal to qualify his expert and allowance of defendants’ expert testimony. For the following reasons, we affirm the trial court judgment.
 

 Discussion
 

 A party claiming the existence of a contract has the burden of proving that the contract was perfected between himself and his opponent.
 
 Enterprise Property Grocery, Inc. v. Selma, Inc.,
 
 38,747 (La.App.2d Cir.9/22/04), 882 So.2d 652,
 
 writ denied,
 
 04-2640 (La.12/17/04), 888 So.2d 876;
 
 Pennington Construction, Inc. v. R A Eagle Corp.,
 
 94-0575 (La.App. 1st Cir.3/3/95), 652 So.2d 637. The trial court’s conclusion regarding the existence of a contract is a finding of fact which may not be disturbed on appeal unless it is found clearly wrong.
 
 Baldwin v. Bass,
 
 28,984 (La.App.2d Cir.12/11/96), 685 So.2d 436,
 
 writ denied,
 
 97-0111 (La.3/7/97), 690 So.2d 20;
 
 Harris v. Wallette,
 
 538 So.2d 728 (La.App. 2d Cir.1989);
 
 Belgard v. Collins,
 
 628 So.2d 1254 (La.App. 3d Cir.1993).
 

 | sLouisiana Civil Code Article 1927 discusses the consent required for the formation of a contract as follows:
 

 A contract is formed by the consent of the parties established through offer and acceptance.
 

 Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.
 

 Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.
 

 Regarding proof of oral contracts, La. C.C. art. 1846 provides as follows in relevant part:
 

 When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dol
 
 *1105
 
 lars may be proved by competent evidence.
 

 If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.
 

 Prior contracts between parties may corroborate the testimony of one of them concerning the making of another contract by the same parties.
 
 James M. Vardaman & Co. v. Ponder,
 
 443 So.2d 697 (La.App. 1st Cir.1983),
 
 writ denied,
 
 446 So.2d 317 (La.1984). The other corroboration must come from a source other than the plaintiff; a compilation of the plaintiffs expenses, prepared at the plaintiffs direction and based on the plaintiffs memory, did not serve as other corroborating circumstances to show that the defendant had agreed to an oral contract to reimburse the plaintiff in
 
 Gulf Container Repair Services, Inc. v. FIC Business & Financial Centers, Inc.,
 
 98—1144 (La.App. 5th Cir.3/10/99), 735 So.2d 41. The sending of a copy of the reception bill by plaintiff to defendant was not a corroborating circumstance in
 
 Hilliard v. Yarbrough,
 
 488 So.2d 1038 (La.App. 2d Cir.1986). Likewise, the plaintiffs markings on trees was not corroborating evidence of an oral agreement with the land owner to mark timber in
 
 Woodard v. Felts,
 
 573 So.2d 1312 (La.App. 2d Cir.1991).
 

 On the other hand, a third person’s eyewitness account of the making of the contract qualifies as corroborating evidence.
 
 Dennis Miller Pest Controls, Inc. v. Wells,
 
 320 So.2d 590 (La.App. 4th Cir.1975),
 
 writ denied,
 
 323 So.2d 806 (La.1976). The testimony of the plaintiff and a third party to the transaction was adequate proof of an oral agreement to transfer stock in
 
 Dunham v. Dunham,
 
 467 So.2d 555 (La.App. 1st Cir.1985),
 
 writs denied,
 
 469 So.2d 989, 990 (La.1985).
 

 In
 
 Creely v. Leisure Living, Inc.,
 
 437 So.2d 816 (La.1983), the Louisiana Supreme Court dealt with a dispute between a seller and a realty agency. The seller was a real estate developer/builder. There had been a prior listing agreement in force between the agency and the seller. The listing agreement did not concern the house in question but other houses. Nevertheless, the house had previously been the subject of a purchase agreement with proposed purchasers, the Gaudets, in which the seller had allowed the agency the right to receive a commission. However, after that purchase contract ended, the seller and the Gaudets later renegotiated for the sale of the home which occurred without the agency receiving a | incommission. The Supreme Court found that no commission was owed, stating:
 

 [T]here was no proof of the existence of an enforceable oral agreement between the seller and realtor for the payment of a commission, at any time, including the period after expiration of the October 24, 1979, [purchase] contract. Nor is there any evidence of an extension of the listing agreement on the original five houses to cover commissions on the sale of other unspecified homes.
 

 Id.
 
 at 820. The court further observed:
 

 Under our jurisprudence, a realtor can win a commission dispute, if he is the procuring cause of the sale, or if the principal would otherwise enjoy an unjust enrichment at the broker’s expense.
 

 Finally, the court, citing other jurisprudence, observed that procuring cause has been defined as a cause originating or setting in motion a series of events which, without break in their continuity, result in the accomplishment of the prime object of the employment of the broker, which may variously be a sale or exchange of a principal’s property, an ultimate agreement between the principal and a prospective con
 
 *1106
 
 tracting party, or the procurement of a purchaser who is ready, willing, and able to buy on the principal’s terms.
 
 Creely, supra
 
 at 820-821. The mere fact that the sale may in some way have been advanced by the previous efforts of a broker does not of itself entitle the broker to a commission.
 
 Creely, supra.
 

 The “procuring cause” concept reviewed in
 
 Creely
 
 which is now urged by Price concerns first and foremost the seller’s obligation to pay a commission to a realtor/agent who has provided services and expertise to aid or “cause” the sale of the seller’s property. The sale transaction is beneficial primarily to the seller, who may then owe a commission. The | n seller is the principal and the realtor is the alleged agent, and any dispute over the existence of their relationship or agency contract raises consideration of the realtor’s role as the procuring cause. This was the dispute in
 
 Creely
 
 between a seller and its one-time agent, and it was likewise the dispute in
 
 Grace Realty Co. v. Peytavin Planting Co.,
 
 156 La. 93, 100 So. 62 (1924), from which the “procuring cause” emphasis was first articulated by the court. This is not the present dispute. Price chose not to make a claim directly against the seller, Sicily Island Farms, Inc., that his actions were the procuring cause of the sale entitling him to all or a portion of the commission which Sicily Island Farms, Inc. paid. From this proper perspective, Price’s claim for a portion of the commission against McCurdy is more tenuous,
 
 [1]
 
 and its resolution must turn on the existence of a contract between the two men.
 

 In the trial of this matter, the trial court heard the conflicting testimonies of McCurdy and Price. The court did not find that there was an exchange of offer and acceptance voiced between the two men and found no oral contract. Additionally, since the alleged agreement concerns a value greater than $500, it was Price’s burden to show through other corroborating circumstances any facts that implied the contract which Price claims. La. C.C. art. 1846.
 

 11 {.Price’s actions in this case involved his disclosure to McCurdy, which occurred by their initial conversation and his trip with McCurdy to inspect one of the properties. Price does not claim that at the time of this sharing of information that he was the agent for the seller of the properties. In fact, he was then the agent of another potential purchaser of the property. This dispute ultimately concerns a commission that is derived from the sale price paid to the seller, and Price’s actions and dissemination of information regarding the seller’s property were made without a connection with that seller or specific knowledge of the seller’s obligation to pay a commission. In fact, it was only by virtue of Wilkes’s later June 25 letter that the 4% commission was apparently first proposed to the seller as the “fair compensation” for the realtors’ services for the transaction.
 

 Accordingly, we do not find that Price’s sharing of information with McCur-dy about these properties in the real estate market can support any implied contract in these circumstances. Likewise, Wilkes
 
 *1107
 
 never clearly understood whether an agreement existed between the parties so that he is not a witness that corroborates the existence of a contract. The trial court correctly found no meeting of the minds concerning a sharing with Price of any real estate commission that might ultimately be paid to McCurdy because of his role as agent for the purchaser. Under the manifest error standard of review, the trial court’s factual conclusions are affirmed.
 
 [2]
 

 I is We also find no merit to Price’s remaining arguments relating to the expert witness testimony. Because our findings are not predicated upon the expert opinion offered by McCurdy, any error raised by Price regarding the trial court’s admission of that testimony into evidence is meritless. Nor do we find error in the trial court’s failure to qualify Gary Robinson as Price’s expert witness considering his lack of experience and the court’s broad discretion in determining whether to allow a witness to testify as an expert.
 
 Mistich v. Volkswagen of Germany, Inc.,
 
 95-0939 (La.1/29/96), 666 So.2d 1073.
 

 Conclusion
 

 For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant.
 

 AFFIRMED.
 

 [1]
 

 . Another setting for realtor disputes is illustrated by the case of
 
 Orleans Title Ins. Agency, L.L.C. v. R. Alan Bartlett, Inc.,
 
 01-0117 (La. App. 4th Cir.2/27/02), 811 So.2d 1126. Such disputes involve the competing claims for the sharing of the seller's commission between the seller’s agent and the purchaser's agent. Despite the lack of any multiple listing agreement between these realtors, this problem was not present in this case, since Wilkes agreed to share the commission. Price’s claim is a step removed from this recurring relational matter involved in real estate transactions, and the basis for his assertion of an entitlement to a share of the commission again is tenuous.
 

 [2]
 

 . For the same reason, the lack of the parties' mutual consent shows that no joint venture agreement was reached. Joint ventures arise only where the parties intend the relationship to exist, and they are ultimately predicated upon contract either express or implied.
 
 Broadmoor, L.L.C. v. Ernest N. Mortal New Orleans Exhibition Hall Auth.,
 
 04-0211 (La.3/18/04),867 So.2d 651;
 
 Pillsbury Mills, Inc. v. Chehardy,
 
 231 La. 111, 124, 90 So.2d 797, 801 (1956), citing
 
 Daspit v. Sinclair Ref. Co.,
 
 199 La. 441, 6 So.2d 341 (1942);
 
 Smith v. Lanzo,
 
 02-1053 (La.App.3d Cir.2/5/03), 838 So.2d 918.